CITY OF OKMULGEE v. OKMULGEE GAS CO. (Oklahoma Natural Gas Corp. Substituted).

No. 18465. Opinion Filed Nov. 5, 1929.

Rehearing Denied Dec. 10, 1929.

L. L. Cowley, City Atty., and A. E. Underwood, for plaintiff in error.

Ames, Cochran & Ames and Allen, Underwood & Smith, for defendant in error.

SWINDALL, J. In this action the plaintiff questions the validity of an act of the Legislature of 1925 which authorizes the surrender of a municipal franchise in exchange for a revocable permit and requiring certificates of convenience and necessity and providing for the determination and issuance thereof. The act has been approved by the Governor and is now part of the law of this state unless it violates some provision of the Constitution.

The act is as follows:

"House Bill No. 4. Revocable Permit Act.

"An act relating to the business of furnishing power, light, heat, gas, electricity, or water in cities and towns; authorizing the surrender of municipal franchises in exchange for revocable permits; requiring certificates of convenience and necessity and providing for the determination and issuance thereof; and repealing acts in conflict herewith.

"Be It Enacted by the People of the State of Oklahoma:

"Corporations—Franchises—Surrender.

"Section 1. Any person, firm, association, or corporation, now or hereafter engaged in the business of furnishing power, light, heat, gas, electricity, or water as a public utility in any city or town in this state under a municipal franchise now in existence or hereafter granted, may at any time before the expiration of such franchise, but not thereafter, file with the clerk of the municipal corporation which granted such franchise and with the Corporation Commission of the state of Oklahoma a written declaration and agreement, executed in the manner required for the execution of conveyances of real estate, that it surrenders such municipal franchise for the purposes herein pro-

vided; and, in consideration, the utility surrendering the same shall, by operation of law, receive in lieu of such surrendered franchise, a permit from the state revocable only in the manner hereinafter provided, granting to such utility the right, until such permit shall be so revoked, to conduct the same business in such municipality and enjoy the use of the streets, alleys, and public grounds, or ways, in the municipality for that purpose and upon the terms and conditions of said surrendered franchise except as to its period of duration, subject to the lawful police regulation and control of such municipality.

"Municipal Corporations—Receipts.

"Section 2. Nothing in this act shall be so construed as to limit the right of any municipal corporation to include in any franchise hereafter granted by it such requirement as it shall see fit that the grantee of such franchise pay to the municipal corporation a portion of the receipts of such grantee from business conducted under such franchise, or pay to such municipal corporation any other sum or sums of money; or such reservation of right in the municipality to purchase the property of the grantee used in the conduct of business under such franchise. Every such right to share receipts or to receive payments of moneys or to purchase created by any franchise or other contract present or future, shall continue to exist to the full extent defined by such franchise or contract; and no existing right of any municipal corporation under the laws of the state of Oklahoma shall be effected (sic) hereby except as herein expressly provided.

"Corporation Commission—Permit—Certificate.

"Section 3. Upon the surrender of any municipal franchise, as provided in the first section hereof, it shall be the duty of the Corporation Commission to issue to such utility a certificate to the effect that from the date of the filing of such written declaration and agreement, it is the holder of such permit, and such certificate shall be conclusive of that fact.

"Permit—Amendments—Revocation.

"Section 4. Any permit granted under the provisions of this act may be altered, amended, annulled, revoked, or repealed by enactment of the Legislature of Oklahoma whenever in its opinion such permit may be injurious to the citizens of this state; in such manner, however, that no injustice shall be done to the holder of such permit.

"Corporations—Franchises—Permits.

"Section 5. No person, firm, association, or corporation except the municipality shall commence the business of furnishing power, heat, light, gas, electricity or water as a public utility, or commence the construction of a plant, works, or system therefor, or apply for or be granted a municipal franchise therefor, in any city or town of this state so long as there is in existence a valid franchise or permit authorizing any other person, firm, association, or corporation, to conduct in such city or town a business similar to that proposed, until the Corporation Commission of Oklahoma shall issue a certificate of public convenience and necessity therefor, as hereinafter provided. But no such certificate shall be required in cases where no such valid franchise or permit exists.

"Corporation Commission—Jurisdiction—Certificates.

"Section 6. The Corporation Commission is hereby given jurisdiction to determine whether public convenience will be served by such proposed new public utility business and whether public necessity exists therefor and to issue such certificate of public convenience and necessity upon hearing after a written petition therefor shall be filed. The Corporation Commission shall have power to promulgate such rules and regulations not in conflict herewith, as it shall see fit, for the purpose of making this act effectual, and before hearing any such petition shall fix a date therefor and shall require that notice of such hearing be given by delivering a copy to the chief executive officer and the clerk of all cities and towns effected (sic) by the proposal and to the managing officer of any person, firm, association or corporation conducting or holding a valid franchise or permit to conduct a similar business in the same locality or any portion thereof. In addition, the Corporation Commission shall require that such notice be published at the expense of the petitioner for at least two weeks in some newspaper or newspapers of general circulation in the cities or towns effected (sic) by such petition. Upon the hearing of such petition, any person interested may appear, and file objections thereto, and offer evidence in support thereof, and the Commission may summon such other witnesses, and require the production of such other evidence as it may deem proper and shall have all powers incident and necessary to a full and complete investigation of such petition and the objections thereto. Upon the hearing of such application, if the Commission shall find that the petition should be granted, it shall issue under the seal of the Commission its certificate of public convenience and necessity, and in so doing the Commission may fix the time within which the construction of such utility shall be commenced and completed. Should the Commission find that the certificate should be refused, it shall so order. Any party to the proceedings feeling himself aggrieved by the order of the Commission in issuing or refusing such certificate, may appeal to the Supreme Court of the state of Oklahoma, as provided in other cases of ap-

peal from orders of the Corporation Commission.

"Repealing Clause.

"Section 7. All acts and parts of acts in conflict herewith are hereby repealed."

"Approved March 19, 1925."

The parties hold the same position in this court as they did in the district court of Okmulgee county, and will be referred to hereafter as plaintiff and defendant.

On July 20, 1905, the incorporated town of Okmulgee, Indian Territory, granted a municipal franchise to L. S. Skelton, his heirs and assigns, authorizing him and his heirs and assigns to use the streets or avenues, alleys and public places of said town for the purposes of laying pipe lines, mains, and other appliances through which to convey gas and furnish the same to the inhabitants of said town. On October 24, 1912, said franchise was assigned to the Okmulgee Gas Company, and on July 7, 1925, while engaged in the business of furnishing natural gas as a public utility under said municipal franchise, the Okmulgee Gas Company made and executed its written declaration and agreement surrendering said municipal franchise for the purposes provided in House Bill No. 4, above set out, and received in lieu thereof a revocable permit as provided in said act.

On the 24th day of November, 1925, the city of Okmulgee, Okla., filed a petition in the district court of Okmulgee county, Okla., for the purpose of enjoining the Okmulgee Gas Company from using the streets and alleys of said municipality, alleging that the franchise granted to L. S. Skelton and his heirs and assigns on July 20, 1905, expired August 7, 1925, and that the revocable permit under which the utility was then operating was invalid, because chapter 102 of the Laws of 1925, above set out as House Bill No. 4, was unconstitutional. The defendant filed its answer, alleging compliance with the terms of said act. The case was tried on an agreed statement of facts, and on April 25, 1927, a decree was granted denying plaintiff the relief sought, and dismissing the petition with prejudice. From this judgment the city of Okmulgee has appealed. The question presented is the constitutionality of the Revocable Permit Law.

Plaintiff contends that the law is unconstitutional and void, and that it is repugnant to sections 5a and 5b, and section 7 of art. 18, of the Constitution of Oklahoma; and also section 32 of art. 2, and section 51 of art. 5, of the Constitution. The defendant claims that the act under consideration is not violative of, or repugnant to any of the provisions of the Constitution.

Ordinance 105, which, under the agreed statement of facts, was the ordinance granting the franchise to L. S. Skelton, his heirs and assigns, the franchise which defendant claims to have surrendered and taken in lieu thereof a revocable permit under House Bill No. 4, was passed and approved and ordered published by the duly elected officers of the incorporated town of Okmulgee, Indian Territory, on July 20, 1905, and published in the Chieftain August 8, 1905, and by section 2 of said ordinance, the said franchise was limited to the term of 20 years, and if House Bill No. 4 is unconstitutional, then the franchise involved in this action expired on August 8, 1925.

As said in City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 Pac. 1058, at page 221 of the opinion:

"It is well settled that the courts are not concerned with the policy of the law, and *it is our duty to interpret the constitutional and legislative enactments as we find them.*"

The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and, when the text of a constitutional provision is not ambiguous, the courts in giving construction thereto are not at liberty to search for its meaning beyond the instrument.

To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort in all cases is to the natural signification in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it. Shaw, State Auditor, v. Grumbine, 137 Okla. 95, 278 Pac. 311.

It is not to be presumed that a provision was inserted in the Constitution or statute without reason, or that a result was intended inconsistent with the judgment of men of common sense, guided by reason. Mitchell v. Lowden, 288 Ill. 327, 123 N. E. 566.

Our Constitutional Convention evidently intended, as far as possible, to reserve in the people of the state, and of the several subdivisions thereof, the right to propose legislation as well as provide for referring acts of legislation to a vote of the people, as

92

the general trend of the several provisions relating to the legislative branch of the government so indicates. Section 1 of art. 5 provides that:

"The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

Section 4a of art. 18 provides that:

"The powers of initiative and referendum, reserved by this Constitution to the people of the state and respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this state, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the previsions of this Constitution."

Section 10 of art. 9 provides that:

"No law shall be passed by the Legislature granting the right to construct and operate a street railroad within any city, town, or village, or upon any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad."

It also appears that the framers of the Constitution and the people in adopting the same, as far as possible, intended to provide for local self-government or home rule.

"The people are above the Constitution, subject to it and all its parts while it is in force, but possessed of the undoubted right to change, alter or amend it at their own will in any of the regular ways provided by the Constitution or laws." Hockett v. State Licensing Board, 91 Ohio St. 176, 110 N. E. 485.

The power to make changes in the organic law is one belonging peculiarly to the people. Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1.

The principle of the initiative and referendum may be inserted in a state Constitution. State v. Brantley, 113 Miss. 786, 74 So. 662.

"A Constitution is legislation direct from the people acting in their sovereign capacity, while a statute is legislation from their representatives subject to limitations prescribed by the superior authority." Ellingham v. Dye, supra.

"A Constitution is a Magna Charta of the people's rights, the fundamental law of

the land, intended, not for short periods of time, but for all time." Henry v. State, 88 Miss. 843, 39 So. 856.

In order to give effect to the intent of the framers of the Constitution and the people in adopting it, we feel that a brief consideration of the historical conditions as they existed at that time is proper. The framers of the Constitution had for their consideration and guidance the Constitutions of 45 states of the Union, and also the construction of the Constitutions of those states by the courts of last resort of said states. Some of the delegates were from the Indian Territory, governed locally by one code of laws, and some from Oklahoma Territory, governed by another code, and each territory without a Constitution, and the Indian Territory without a Legislature, and each territory being limited in its local self-government by the Congress of the United States.

The municipalities in Oklahoma Territory had the power to grant charters for a period not exceeding 21 years, and the municipalities in Indian Territory, under Mansfield Digest, chapter 29, sec. 775 (Ind. T. Ann. St. 1899, section 525), had the right, through its mayor and council, to contract with any person or company to construct and operate water systems and furnish gas to such cities and to construct street railroads, for a period of time to be agreed upon in the franchise.

On October 19, 1904, the Court of Appeals of Indian Territory in the case of Incorporated Town of Tahlequah v. Guinn, 82 S. W. Rep. 886, held that a contract giving a water company the exclusive privilege of supplying water for streets and public places in the town for 60 years was valid.

At that time, there was in force in some of the states laws granting exclusive privileges and exclusive franchises, others granting perpetual franchise with the right reserved in the legislative branch of the government to alter, amend, annul, revoke, or repeal any charter of corporations or franchises subject to being altered, amended, revoked, or repealed, where, in its opinion, it might be injurious to the citizens of the state, in such manner, however, that no injustice be done the incorporators; and still others with authority to grant limited franchises for a certain number of years fixed by the statute of those states.

The National Association of Editors at Guthrie in June, 1905, secured a strong resolution favorable to joint statehood. About July 1, 1905, when the press of the state was announcing in big headlines the Okla-

homa Statehood Convention to be held July 12, 1905, Mr. J. A. Norman, a Cherokee citizen, who for some time had labored for separate statehood for the Indian Territory, issued a call for an election to be held August 7, 1905, at which time seven delegates from each of the 27 recording districts in the Indian Territory were to be elected, for the purpose of convening at Muskogee August 21, 1905, and writing a Constitution for a state to be formed of the territory embraced by the Five Civilized Tribes. This call recited the facts that the federal government would complete the allotting of Indians by the close of the fiscal year; that tribal governments would close March 4, 1906; and that the people of the Indian Territory were sorely displeased with the "bureaucratic" government from Washington, D. C. W. C. Rogers, Chief of the Cherokees; Green McCurtain, Chief of the Choctaws, and J. A. Norman signed and published this call. A short time thereafter, a new call was prepared and signed by four of the Chiefs and Governors, and by Mr. George Scott, as secretary, asking the people of the different incorporated towns and communities to elect on August 7, 1905, delegates to the Muskogee convention. The principal difference between this call and the first one was the manner of selecting delegates. This convention was organized and known as the Sequoyah Convention, and after adopting a Constitution, memorialized Congress for admission into the Union as a state, reciting briefly the manner in which 32 states had been added to the original thirteen. The Congress of the United States refused to approve the action of the Sequoyah Convention, but shortly thereafter passed the Enabling Act, under which Oklahoma Territory and Indian Territory were permitted to draft our Constitution.

From the historical events and conditions existing about the time the framers of the Constitution assembled and prepared and submitted to the people for their ratification the Constitution, they had in mind the reservation of power in our Constitution by the people to themselves. They also had in mind that the surest way of securing franchises satisfactory to the people was for the people to vote such franchises, so they provided by section 5a of art. 18, supra, that:

"No municipal corporation shall ever grant, extend or renew a franchise, without the approval of the majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval, to such electors at any general municipal election, or call a special. election for such purpose at any time after 30 days notice; and no franchise shall be granted, extended or renewed for longer term than 25 years."

Also by section 5b, supra, that:

"Whenever a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election, demanding that a franchise be granted, extended, or renewed, shall be filed with the chief executive officer of said corporation, the chief executive officer shall, within 10 days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city."

And by section 7 of art. 18, that:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate sub-divisions, of their control and regulation of such use and enjoyment.

"Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

Further, by section 2 of art. 18, that:

"Every municipal corporation now existing within this state shall continue with all of its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by this Constitution."

Then, to prevent any exclusive franchise or privilege ever being granted in this state, the framers incorporated in the Constitution section 51 of art. 5, which reads:

"The Legislature shall pass no law, granting to any association, corporation, or individual, any exclusive rights, privileges, or immunities within this state."

The Constitution with the foregoing provisions incorporated therein was adopted and the state of Oklahoma erected.

Presently the Supreme Court was called upon to construe many of these provisions. Among the cases coming before this court were: Mayor and Councilmen of City of Pawhuska v. Pawhuska Oil & Gas Co. et al., 28 Okla. 563, 115 Pac. 353, in which this court held that section 5a, art. 18, of the Constitution, providing that no franchise shall be granted for a longer period than 25 years, is self-executing; and section 5b, art.

18, of the Constitution, providing that after a franchise has been voted to be granted by a majority of the qualified electors voting thereon, the same shall be granted by the proper authorities at the next regular meeting of the legislative body of the municipality, imposes upon the mayor and councilmen a mandatory ministerial duty. Also, the case of State ex rel. Caldwell v. Hooker, County Judge, 22 Okla. 712, 98 Pac. 964, where it is said:

"In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified."

On the same subject we have Overholser v. Oklahoma Interurban Trac. Co., 29 Okla. 571, 119 Pac. 127, where it is held that:

"(Section 5a, art. 18, of the Constitution) applies to an original franchise or to a renewal or extension of the period for which a grant has been made, and does not apply to a mere extension or enlargement of the facilities which the franchise holder employs in exercising a power previously granted."

In the case of Noble State Bank v. Haskell et al., 22 Okla. 48, 97 Pac. 590, at page 79 of the opinion, it is held that section 51, art. 5, supra, "is, in effect, that every association or corporation, and any individual, may have any right that any other of the same class may have."

Section 5b, art. 18, provides that:

"Whenever a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election, demanding that a franchise be granted, extended, or renewed, shall be filed with the chief executive officer of said corporation, the chief executive officer shall, within ten days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city."

As said before, this section has been held to be mandatory. City of Pawhuska v. Pawhuska Oil & Gas Co., supra. This section does not say "any city" or town in which there is not now in existence a valid franchise or valid permit authorizing any other person, firm, association, or corporation to conduct in such city or town a business similar to that proposed, until the Corporation Commission shall issue a certificate of public convenience and necessity therefor, but it very clearly says, and just as certainly means, that whenever a petition is signed by the requisite number of qualified electors of "any city," whether there is in existence a valid franchise or valid permit or a dozen or more valid franchises or valid permits, it is the duty of the chief executive officer to call, and he shall, within ten days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city. The vote of a majority of the said electors voting thereon determines the question of whether or not a franchise shall be granted. If a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city; and if a majority of the qualified electors voting thereon at said election do not vote favorable to the grant, extension, or renewal, that is the end of the issue until another petition is presented in a lawful manner, and the Corporation Commission of Oklahoma has nothing whatever to do with the granting, extension, or renewal of a franchise in a municipal corporation, such power being reserved in our Constitution by the people to themselves.

Section 2, art. 18, supra, provides that municipal corporations "shall always have the additional rights and powers conferred by this Constitution." This right and power being given the qualified electors of a municipal corporation, by the Constitution, it cannot be taken away by the Legislature.

In the case of Perrysburg v. Ridgway, 140 N. E. 595, the Supreme Court of Ohio said:

"Express delegations of political power are made through constitutional provisions and are necessarily exclusive delegations of power unless it be expressly provided otherwise. * * *

" 'They (the people) have, therefore, the most undoubted right to delegate just as much, or just as little, of this political power with which they are invested as they see proper, and to such agents or departments of government as they see fit to designate. To the Constitution we must look for the manner and extent of this delegation; and from that instrument alone must every department of government derive its authority to exercise any portion of political power.' "

We have been unable to find any Constitution with provisions similar to sections 5a and 5b, supra.

The Supreme Court of the state of Iowa, in 1902, under Code of 1873, par. 473, held that:

"When the right to operate water works should be granted to a private corporation, the grant should not be made to inure for more than 25 years, an ordinance purporting to grant a private corporation the exclusive privilege for 25 years, and an equal right thereafter, of supplying the city with water, was invalid as to the attempted extension of the grant for a greater period than 25 years." Cedar Rapids Water Co. v. City of Cedar Rapids, 91 N. W. Rep. 1081.

In that case the court held:

"Grants of franchises in perpetuity or for unreasonably long periods of time are generally regarded as against public policy, and, if ever valid, the authority therefor must be found in the Constitution or statutes of the state. Richmond Co. Gaslight Co. v. Town of Middletown, 59 N. Y. 228; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143; Long v. City of Duluth, 49 Minn. 280. 51 N. W. 913. 32 Am. St. Rep. 547; Thrift v. Elizabeth City, 122 N. C. 31, 30 S. E. 349, 44 L. R. A. 427. And it doubtless was with this principle in view that the Legislature expressly denied to a city government power to grant a franchise of this nature for any terms exceeding 25 years. That enactment enters into and controls every grant made thereunder, and courts have no alternative but to recognize its authority."

In Smith v. City of Osceola et al. (Iowa) 159 N. W. 648, the Supreme Court of that state held that:

"Under Code, section 775, empowering a city to authorize and regulate the use of its streets for telephone lines, and section 776, providing that no 'franchise' shall be granted by a city for such use of its streets unless the electors vote therefor, and that the party applying for the 'franchise' shall pay the expenses of the election, 'franchise' is used in its limited and technical sense of a privilege conferred by grant from the government and vested in an individual, so that a general ordinance, under which any one may so use the street, if the electors approve thereof, is not contemplated, but one granting the privilege to the individual applicant."

In the case of City Water Co. Chillicothe v. Chillicothe, Mo., 207 Fed. 503, the United States Circuit Court of Appeals, Eighth Circuit, said:

"Where a city ordinance, entering into a contract with and granting a franchise to a water company, specifies a definite term for its duration, the rights of the company and the obligation of the city under its contract terminate on the expiration of such term, and cannot be enlarged by implication."

In the case of Des Moines Water Co. v. City of Des Moines et al., 206 Fed. Rep. 657, that court said:

"A grant to a water company by a city ordinance of a franchise to operate waterworks for a definitely fixed term, accepted and acted on by the company, terminates at the end of that term by force of the terms of the instrument of grant, and cannot be enlarged by implication."

In the case of City of Owensboro v. Cumberland Telephone & Telegraph Co., 57 L. Ed. 1389, the Supreme Court of the United States says:

"The grant by municipal ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the city streets and alleys with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as consequence of some limitation imposed by the general law of the state or by the corporate powers of the city making the grant."

In the case of Postal Telegraph-Cable Co. v. Ingraham et al., 228 Fed. 392, the court says:

"A permit granted by the mayor and aldermen of a city for the erection of telegraph poles and wires in a street, and duly made use of, though granted without any legal consideration being paid therefor and in general terms without any limit is not revocable at will, but constituted a franchise which is assignable, and could not be terminated or substantially modified, except for good cause. See Owensboro v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389."

In the case of Farmers' Telephone Co. of Quimby v. Town of Washta et al. (Iowa Telephone Co., Intervener), 133 N. W. 365, the court says:

"It is to be conceded that cases may be found, and they are cited by counsel, in

which statutes, more or less similar to our own, have been shorn of their apparent effect, and construed as giving cities and towns no more than a power of supervision or regulation. The thought which seems to have influenced these holdings, and is pressed upon our attention in appellant's brief, is that, where the state—the repository of the sovereign power—has by general statute given telephone and other similar corporations the right to occupy the public highways with their poles and wires, it cannot be presumed that the Legislature intended to confer upon cities and towns the right or power to exclude them from their corporate limits.

"We do not regard the reasoning by which this conclusion is reached as convincing or persuasive. It is a safe rule to assume that the Legislature means what it clearly says. The state may and does delegate certain of its powers to municipal corporations, and if, in its judgment, such corporations can best or most effectually control, improve, and protect the streets within their limits, and statutes to that effect are duly enacted, we know of no restriction in the Constitution or in principles of public policy which should impel the courts to construe away their obvious meaning. It was entirely competent for the Legislature to restrict the scope of the right or privilege which had been conferred by Code section 2158, and this we think it did by the provisions of the later statute."

In the case of Stites v. Norton, (Ky.) 101 S. W. 1189, 13 L. R. A. (N. S.) 474, that court says:

"A constitutional provision requiring the sale of public franchises to the highest bidder does not prevent a municipal corporation from excluding one already enjoying a similar franchise from competition for the right to string electric light wires along the public streets, in order to prevent a monopoly of the business, where other sections of the Constitution show an intention to prevent monopoly and afford opportunity for competition in all things necessary to the welfare of the public."

In the body of the opinion, at page 475, 13 L. R. A. (N. S.) we find this language:

"The Constitution of the state imposes upon legislative bodies the duty to protect the citizens against monopolies, trusts, and unlawful combinations. No more important obligations are imposed upon a legislative body than that of shielding the citizen against extortion in matters of public necessities; no higher duty than that of opening the doors to the fullest competition in such matters. The following are some of the sections showing that the framers of the Constitution had in mind the great importance of preventing monopolies and affording opportunities for competition in all things which are necessary for the welfare and happiness of the people. Section 3 of the Bill of Rights prohibits exclusive privileges; section 190 provides that no corporation can have the benefit of future legislation unless it accepts the provisions of the Constitution; section 195 prohibits corporations from conducting their business so as to infringe upon the equal rights of individuals; section 198 prohibits trusts and combines, and directs the Legislature to take steps to crush them; section 199 compels telegraph companies to receive and transmit each other's messages; section 201 prohibits railroads, telegraph and telephone companies, or other common carriers, from consolidating with or acquiring parallel and competing lines; sections 213, 214, and 215 contain stringent provisions to prevent discrimination; to prevent the making of exclusive or preferential contracts; to compel common carriers to receive, handle, ship, and switch all freight without discrimination, and to handle each other's cars. All the provisions of the Constitution on the same subject should be construed together, to the end that the purpose and intention of the provisions might be ascertained and carried into effect. Thus construing the Constitution, it is evident that it was the duty of the city council to take the necessary steps to relieve the people of the city from paying exorbitant prices for electricity for lighting purposes by establishing a competing plant, and fixing the maximum price at which it could sell electricity. This duty was of equal dignity, and as binding upon it as that of selling the franchise to the highest and best bidder; and it had the right, in our opinion, to so frame the ordinance as to accomplish the purpose of obtaining a competing plant."

We quote at length from some of the foregoing cases for the reason that they are from states having either constitutional or statutory provisions similar to the constitutional provisions involved in this action, and show a tendency the same as the framers of our Constitution had in mind, that in order to promote business we must have competition in all lines of business, including public utilities, and therefore provided for the qualified electors in cities and towns voting as many competitive franchises as they deem necessary to secure just competition. In 1925, when the Legislature enacted House Bill No. 4, the members seem to have had in mind the regulation and supervision of public utilities and the stifling of competition by granting perpetual franchises and prohibiting municipal corporations from granting competing franchises, until the Corporation Commission, after a

public hearing, had issued a certificate of public convenience and necessity.

In 1907, at the time our Constitution was being framed, the Legislature of the state of Wisconsin appears to have arrived at the same conclusion as that reached by the Legislature of Oklahoma in 1925, but in 1906-07, the framers of our Constitution held a strong conviction against monopolies and perpetuities and favored encouraging just competition, as shown by clauses, paragraphs, and sections of our organic law. The Revocable Permit Act, commonly known as House Bill No. 4, is patterned after an act of the Legislature of the state of Wisconsin, known as the Indeterminate Permit Act. The first case we find construing the Indeterminate Permit Law of Wisconsin, is the case of State ex rel. Kenosha Gas & Electric Co. v. Kenosha Electric Ry. Co., decided by the Supreme Court of Wisconsin on January 10, 1911, and reported in 129 N. W. 600, wherein that court says:

"Where an indeterminate permit has been acquired under the Law of 1907, chapter 499, referred to, as amended by Laws 1909, c. 180, within the scope thereof, the municipality is under disability to grant any conflicting franchise privilege, except in case of public necessity and convenience, the fact in that regard to be found as matter of fact and certified by the railroad rate commission prior to making such conflicting grant."

At page 603, we find this language:

"The public utility law, in form, in unmistakable terms disabled the city of Kenosha from making such a grant as that in question after respondent's indeterminate permit took effect. It provides that:

" 'No license, permit or franchise shall be granted any person, copartnership, or corporation to own, operate, manage or control any plant or equipment for the production, transmission, delivery or furnishing of heat, light, water or power 'in any municipality where there is an operation under an indeterminate permit as provided in this act a public utility engaged in similar service without first securing from the commission a declaration after a public hearing of all parties interested, that public convenience and necessity require such second public utility.'

"That is plain. The purpose of it is obvious. The intent was to give the holder of an indeterminate permit, within the scope thereof, a monopoly, so long as the convenience and necessities of the public should be reasonably satisfied, yet to secure to the public the benefit of the monopoly in excess of a fair return upon the investment, under

proper administration, by insuring to the consumers the best practicable service at the lowest practicable cost, and to that end prohibit, conditionally, the granting of just such franchises as the one challenged in this case in the circumstances under which the ordinance of June 7, 1909, was passed."

This question is next discussed by the Wisconsin Supreme Court in the case of City of La Crosse v. La Crosse Gas & Electric Co., 130 N. W. 530, which is discussed extensively in the brief of the defendant in error. We next find this law considered by the Supreme Court of Wisconsin in the case of Calumet Service Co. v. City of Chilton, 135 N. W. 131, where the court says:

"A privilege within the scope of No. 14, whether a license, permit, or technically a franchise, is the latter in the statutory sense. * * *

"An indeterminate permit is a perpetual exclusive privilege within the scope of the grant, subject to the Code of conditions and limitations. * * *

"An indeterminate permit duly received for an old privilege is of the same scope as the latter as to the privilege feature, freed from all considerations, limitations, reservations, and control incident prescribed by the municipality as a state agency, including the right of repeal, if any reserved, but subject to the conditions and limitations of the public utility law. * * *

"The purpose of the law was to give the holder of an indeterminate permit as in Nos. 22 and 23, as regards the conditions existing at the time of its origin, and a qualified monolopy within the scope of the privilege, subject to the conditions and limitations of the public utility law,—the term 'monopoly' not being used in its common-law sense, except as to exclusiveness, but being characterized by purpose to promote public welfare, by a return consideration and by not being of common right, instead of being otherwise but for the grant and being for private gain."

It is the contention of the defendant that sections 5a and 5b of art. 18 of the Constitution were intended only to limit municipal corporations in granting franchises and limiting the period of time for which they might grant the same, for the reason that the same appear under the title of "Municipal Corporations," and that the limitation of 25 years for which a franchise might be granted, renewed, or extended applied only to franchises granted by the municipality, and that under section 47 of art. 9 the Legislature shall have power to alter, amend, annul, revoke, or repeal any charter of incorporation or franchise, and that under

this section the Legislature might alter or amend a charter so as to eliminate the 25-year limit fixed by section 5a of art. 18 of the Constitution. However, under the reasoning of the defendant that the limitation of section 5a of art. 18, supra, did not apply to franchises that might be granted by the Legislature to operate in a municipality, for the reason that the same was under the title of "Municipal Corporations," it could be argued with equal force that the power granted the Legislature to alter, amend, annul, revoke, or repeal a franchise does not apply to franchises granted by a municipality for the reason that section 47 of art. 9 appears under the title of "Corporation Commission—Public Service and Private Corporations," and also that the restrictions of section 7, art. 18, did not apply to any franchise except such as might be granted by a municipality, because it likewise comes under the title of "Municipal Corporations."

All of the authorities that we have been able to find hold that where a franchise is not limited in its existence to a fixed and definite period of years, then the same is a perpetual franchise, and if we should hold that section 5a of art. 18 was intended by the framers of the Constitution to limit only the powers of municipalities in granting franchises, and that the Legislature had the power to grant a franchise, or provide for the surrendering of a limited franchise granted by a municipal corporation and accept in lieu thereof a revocable permit without limit as to time of existence, in other words, a perpetual franchise, and thus extricate House Bill No. 4 from the control of section 5a of art. 18, supra, then it would run into the teeth of section 32 of art. 2 of the Constitution, which provides that:

"Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed."

It is also contended that House Bill No. 4 is not repugnant to the Constitution for the reason that by section 4 thereof, "any permit granted under the provisions of this act may be altered, amended, annulled, revoked, or repealed by enactment of the Legislature of Oklahoma whenever in its opinion such permit may be injurious to the citizens of this state; in such manner, however, that no injustice shall be done to the holder of such permit."

It will be noted that the act does not give the Legislature power to grant, extend, or renew, but specifically limits the power of the Legislature to alter, amend, annul, revoke, or repeal such permit, when in its opinion such permit may be injurious to the citizens of this state, and then in such manner that no injustice shall be done to the holder of such permit. This section is very similar to the provisions of section 47 of art. 9, but there is a material difference in the language employed in sections 5a and 5b of art. 18, and the language employed in section 47 of art. 9, and of section 4 of House Bill No. 4. By sections 5a and 5b of art. 18, supra, it is provided how a charter may be granted, extended, or renewed, and limits the period for which it may be granted and the period to which it may be extended or renewed to 25 years. Under House Bill No. 4, the revocable permit is simply a perpetual franchise which may be altered, amended, annulled, or revoked by the Legislature of Oklahoma only whenever in its opinion such franchise may be injurious to the citizens of the state.

Further, the municipality is deprived by House Bill No. 4 of renewing or extending a franchise, and the qualified electors of a municipality equal to 25 per centum of the total number of votes cast at the next preceding general municipal election are deprived of their right of demanding that a franchise be granted, extended, or renewed, and the qualified electors, by a majority vote thereof, are deprived of the right of expressing their opinion as to whether or not the franchise should be granted, extended, or renewed, and if a majority should vote in favor thereof, the proper authorities of the municipality cannot perform the ministerial duty which this court has held was enjoined upon them by the Constitution. House Bill No. 4 also provides that:

"Any party to the proceedings feeling himself aggrieved by the order of the Commission in issuing or refusing such certificate, may appeal to the Supreme Court of the state of Oklahoma, as provided in other cases of appeal from orders of the Corporation Commission." Section 6.

Section 32 of article 9, relative to appeals from the Corporation Commission in other cases, is:

"In no case of appeal from the Commission shall any new or additional evidence be introduced in the Supreme Court; but the chairman of the Commission, under the seal of the Commission, shall certify to the Supreme Court all of the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or con-

sidered by, the Commission as may be selected, specified and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the Commission may deem proper to certify. The Commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof, a written statement of the reasons upon which the action appealed from was based, and such statement shall be read and considered by the Supreme Court, upon disposing of the appeal. The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the Commission appealed from, as well as any other matter arising under such appeal; Provided, however, that the action of the Commission appealed from shall be regarded as prima facie just, reasonable, and correct; but the court may, when it deems necessary, in the interest of justice, remand to the Commission any case pending on appeal, and require the same to be further investigated by the Commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the Commission by any party in interest) before the appeal is finally decided."

Next, does House Bill No. 4 violate section 51 of article 5 of the Constitution? Section 51 of article 5 is, in effect, that every association or corporation, and any individual, may have any right that any other of the same class may have. Noble State Bank v. Haskell et al., supra.

A corporation now or hereafter engaged in the business of furnishing power, light, heat, gas, electricity, or water as a public utility in any city or town, under a franchise which it secured from a city by a petition signed by a number of qualified electors of said city equal to 25 per centum of the total number of votes cast at the next preceding general municipal election, demanding that a franchise be granted, which was filed with the chief executive officer of said city, and the chief executive officer of said city in obedience to the demand of said petition called a special election within ten days after the petition was filed with him, at which election he submitted the question of whether or not such franchise shall be granted, and at said election a majority of the said electors of the city voted for the grant of such franchise, and the same was granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city. This franchise is not operated by the holder as the qualified electors of the city feel it should be, or the qualified electors feel it

would be for the best interest of the city to grant a competing association, corporation, or individual a franchise to engage in the same or a similar business, and the constitutional number of qualified electors of the city prepare a petition in writing and circulate the same and secure the signatures of the requisite number of qualified electors residing in the city and present the same to the chief executive officer of the city, demanding that he file the same and demanding that he call an election thereon within ten days, as commanded by the Constitution. The chief executive officer replies to the electors that he would be pleased to comply with their demands, but section 5 of chapter 102, Session Acts of 1925, being House Bill No. 4, provides, that no person, firm, association, or corporation, except the municipality, shall commence the business of furnishing power, heat, light, gas, electricity or water as a public utility, or commence the construction of a plant, works, or system therefor, or apply for or be granted a municipal franchise therefor, in any city or town of this state so long as there is in existence a valid franchise or permit authorizing any other person, firm, association, or corporation to conduct in such city or town a business similar to that proposed, until the Corporation Commission of Oklahoma shall issue a certificate of public convenience and necessity therefor, after a petition has been filed with the Corporation Commission, and notice given and a hearing held and an appeal granted any person aggrieved, as more fully appears in section 6 of House Bill No. 4; that there is existing in the city petitioned to grant a franchise a valid franchise, and the individual requesting a franchise has not complied with section 6 of House Bill No. 4, and therefore, as the chief executive officer of the city, he must refuse to file the petition demanding that an election be called and must refuse to call an election for the same reason, and for the reasons only that House Bill No. 4 prohibits the applying for or the granting of a franchise by a municipal corporation in any city or town of this state so long as there is in existence a valid franchise or permit authorizing any person, firm, association, or corporation to conduct in such city or town a business similar to that proposed. Which must control the action of the chief executive officer of the city, section 5b of article 18 of the Constitution, or sections 5 and 6 of House Bill No. 4? We think the only answer to this question is that, section 5b of the Constitution

and House Bill No. 4 being in conflict, section 5b of the Constitution must prevail.

Also, does the individual applying for the second franchise have any right that any other of the same class may have when he is denied a vote by the electors of the city on the question of whether or not such franchise should be granted? We must hold that denying him the right to file his petition signed by the requisite number of electors for the purpose of having the question of whether or not he shall be granted a franchise denies him a right which the corporation that secured the first franchise had.

We feel it is too clear to need further discussion that House Bill No. 4 burdens section 5b of art. 18 of the Constitution, which makes it mandatory upon the authorities of a municipality to call a special election within 10 days after the chief executive officer of the municipality has been petitioned by a number of qualified electors of the municipality equal to 25 per centum of the total number of votes cast at the next preceding general municipal election demanding that a franchise be granted, extended, or renewed, at which election the chief executive of the municipality shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if at said election a majority of said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of said city.

It seems so clear to us that the terms of House Bill No. 4, being the act under consideration, violate sections 5a and 5b of art. 18, and section 32, art. 2, of the Constitution, that it is useless to further pursue this discussion. If a legislative enactment is repugnant to, violates, or burdens our Constitution, it is the duty of this court to so say and strike down such legislation.

If our Constitution lives, then our rights to life, liberty, and property are sure; its words give a firm foundation upon which the Legislature and the people may build our laws and rest secure. So we hold that in cases where a provision of the Constitution is self-executing, legislation may be desirable by way of providing a more specific and convenient remedy, and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right, and make it more available, and such laws must not curtail the rights reserved or extend the limitation specified.

The limitation specified in the Constitution for a municipal charter granted by a municipality is 25 years, and this may be extended not exceeding 25 years, as provided for in the Constitution, and any act of the Legislature that violates section 5a is repugnant to the Constitution and must fall. Any act of the Legislature which attempts to burden section 5b, which guarantees to the people the power therein reserved by them to vote a municipal charter or to renew or extend one, is likewise repugnant to the Constitution and void. Any act of the Legislature which provides for issuing a license. revocable permit, indeterminate permit, or other instrument in the nature of a franchise, which is not limited as to its time of existence, violates section 32 of art. 2 of our Constitution.

We therefore hold that House Bill No. 4, approved March 19, 1925, and known as chapter 102 of the Session Laws of 1925, is repugnant to the Constitution, and is therefore void.

The only questions before this court for consideration have to do with the granting, extension, or renewal of franchises granted by municipal corporations and the surrender of such franchises and receiving in lieu thereof a revocable permit; therefore a number of the cases cited and argued by counsel for defendant have no bearing upon the case at bar. They deal with the reservation to the state of the controlling power, in the way of taxation, as to franchises and grants from municipalities of a public nature and the right of the state, or any of its subordinate subdivisions, of their control or regulation of such use and enjoyment and the power to regulate charges for public service.

For the reasons herein stated, we are of the opinion, and hold, that the findings and judgment of the district court of Okmulgee county were erroneous, and should be, and the same hereby are, in all things vacated, annulled, and set aside, and this cause reversed and remanded to the district court of Okmulgee county, Okla., to set aside the judgment heretofore entered in said court in this cause and to grant the plaintiff a new trial, and to further proceed the same as though House Bill No. 4 had never been

passed by the Legislature and approved by the Governor, and to take such further proceedings in this action as may be consistent with this opinion.

MASON, C. J., LESTER, V. C. J., and CLARK, RILEY, HEFNER, CULLISON, and ANDREWS, JJ., concur.

---

HUNT, J. (dissenting). After a most thorough study of the questions involved herein and a careful review of numerous decisions of this court cited and relied on in the briefs filed herein, I am unable to agree with the opinion of the majority, that the act here in question is unconstitutional.

The sole responsibility for the enactment of the law is the Legislature, and not ours, and under the oft-announced rule of this court and other courts of last resort, an act of the Legislature will not be declared unconstitutional unless we can say it is unconstitutional beyond all doubt, and I am unable to so say, as to this act, and therefore respectfully dissent.

---

LESTER, V. C. J. (concurring). I concur in the opinion of this court as expressed through Mr. Justice Swindall.

It is only on account of the important and vital issues here presented that I offer this brief concurring opinion.

The plaintiff in error in the court below and on appeal challenges the constitutionality of the principal provisions contained in House Bill 4, chapter 102, Session Laws 1925, and known as the Revocable Permit Act.

If, after measuring the act in question with the Constitution of this state, we were left in doubt as to its constitutionality, it would then be our duty to resolve such doubt in favor of the act and sustain it. On the other hand, if it is found that the act is clearly in contravention of the Constitution of this state, then the court should declare the act is without force or effect.

Is the act unconstitutional? In beginning the application of this test, it is well to remember the language to be found in Cooley's Constitutional Limitations (8th Ed.) p. 124, wherein it is said:

"The object of construction, as applied to a written Constitution, is to give effect to the intent of the people adopting it."

The basic law of this state compels every department of the state to anchor its official acts within the limitations of the Constitution. The Constitution has placed grants in, and limitations of power on the Legislature, and when it clearly appears that an act of the Legislature is unconstitutional, and it is properly challenged in a court of competent jurisdiction, it becomes the bounden duty of such court to strike the act from operation.

Under our theory of government and political system the ultimate sovereignty is vested in the people, and it is from them that springs all legitimate authority. The Constitution of the state of Oklahoma contains the last expression of its people, and from this written expression, consisting of grants and limitations, we must determine the validity of House Bill 4, and in beginning the test we shall first apply section 32, art. 2, of the Bill of Rights, which provides:

"Perpetuities and monopolies are contrary to the genius of free government, and shall never be allowed."

The framers of our Constitution had before them our federal Constitution and the Constitutions of the several states of the Union, and in addition, they knew that modern life and advancement had increased necessities for the industrial, commercial, agricultural, and domestic welfare; that through the agencies which would obtain franchises from the state and the municipalities the people would be compelled to procure fuel, light, water, transportation, communication, and other necessities; that the holders of these franchises were to become, in a large measure, the source and arteries of distribution for the indispensable commodities for the use of the people of the commonwealth. Therefore, the makers of our Constitution visioned that the forced need of these necessities by the people, combined with a monopoly of service and supply, would produce an unbearable and intolerable condition on the people, and in order to protect the people against such an injury and injustice, every known barrier and protection was placed in the Constitution to prevent a monopoly of service, charge, or perpetuity.

The Constitution not only placed a limitation against the Legislature from granting a monopoly or exclusive rights, but also forbade the municipalities that were authorized to grant a franchise by popular vote from granting any such privilege or monopoly. Of such tremendous import did this question become that there was inserted a declaration in the Bill of Rights provid-

ing that "Perpetuities and monopolies are contrary to the genius of free government, and shall never be allowed."

Mr. Justice Brewer, speaking for the court in the case of Atchinson Street Ry. Co. v. Missouri Pac. Ry. Co. (Kan.) 3 Pac. 284, said:

"The Supreme Court of the state of Michigan, upon this subject, has said: 'Declarations of rights, or Bills of Rights, are the enumeration of certain great political truths essential to the existence of free government.' 30 Mich. 201. In short, counsel seems to look upon it as but little more than a compilation of glittering generalities. From this, as broadly as it is stated, we dissent. Many of its sections are clear, precise, and definite limitations upon the powers of the Legislature and every other officer and agency of the people. Section 5 reads: 'The right of the trial by jury shall be inviolate.' Section 16: 'No person shall be imprisoned for debt except in cases of fraud.'

"The meaning and extent of these are clear. They limit the power of the Legislature, and no act of that body can be sustained which conflicts with them. Indeed, all of them may be considered, generally speaking, as conditions and limitations upon legislative action; and no law can be sustained which trenches upon the rights guaranteed by them, or which conflicts with any limitation expressed in them. It is true, many of them are largely mere affirmations of political truths, and yet, as to those, it may safely be asserted that the political truths affirmed cannot be ignored in any valid enactment. See, upon the general scope and effect of bills of rights, Story, Const. c. 44; Kent, Comm. section 24."

Monopoly, as defined in Webster's Dictionary, is:

"The exclusive right, privilege, or power of selling or purchasing a given commodity or service in a given market; exclusive control of the supply of any commodity or service in a given market; hence, often in popular use, any such control of a commodity, service, or traffic in a given market as enables the one having such control to raise the price of a commodity or service materially above the price fixed by free competition. 2. A grant or charter of a monopoly. * * * 4. Exclusive possession of anything."

The text of House Bill 4 is to be found in the opinion of this court filed on this date, and only certain portions of the bill as are necessary to mention herein will be set forth.

Section 32, art. 2, Bill of Rights, closes forever the door of monopoly, but in the face of this provision, House Bill 4 attempts

to delegate to the Corporation Commission the right to reopen the door thus closed.

It is contended by the defendants that the rights of the municipalities are limited in their privilege to grant franchises and that this right may be withdrawn by the Legislature at its will; and that, acting under the sovereignty of the state and by virtue of section 47, art. 9, Const., which reads:

"The Legislature shall have power to alter, amend, annul, revoke or repeal any charter of incorporation or franchise now existing and subject to be altered, amended, annulled, revoked, or repealed at the time of the adoption of this Constitution, or any that may be hereafter created, whenever in its opinion it may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the incorporators."

—that the Legislature was acting within prescribed bounds in passing House Bill 4. If the reader will turn to section 1 of art. icle 9, it will be discovered that municipal corporations are excluded from the definitions of corporations or companies; and that article 9 deals mainly with the creation of, and the regulation of corporations and stock companies, and it will be further observed that section 47, art. 9, has reference to the primary charter or franchise of incorporation and has no reference to secondary franchises procured by corporations from the state or municipalities.

The Constitution in section 58, art. 5, takes the precaution to use this language in reference to the granting of franchises by the Legislature:

"An emergency measure shall include only such measures as are immediately necessary for the preservation of the public peace, health, or safety, and shall not include the granting of franchises or license to a corporation or individual, to extend longer than one year."

Again, section 51, art. 5, contains another limitation on the Legislature in providing:

"The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this state."

House Bill 4 attempts at the pleasure of the Corporation Commission to place around the present owner of a municipal franchise protection against competition. Under the terms of section 51, art. 5, the Legislature cannot delegate to any person, board, or commission the right to embarrass such competition.

The able attorneys representing the defendant in error have marshaled a masterly argument in behalf of their position, but they face an insurmountable difficulty in attempting to penetrate the basic barriers which are to be found in the Constitution and plainly placed therein to prevent just the character of legislation that is to be found in House Bill 4.

The Oklahoma Constitution reserves to the people, through the initiative and referendum, an effective method of popular expression. The initiative and referendum was applied to every lesser unit of government of the state of Oklahoma. It was applied to every county and district and to all municipal corporations, and this right of popular expression is guaranteed to all of the municipal corporations in Oklahoma in all matters of local concern.

Section 5a, art. 18, provides in part:

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits."

Section 5b of article 18 gives an unqualified right to the citizens residing in such corporation to call an election and determine whether or not the franchise shall be granted, extended, or renewed. The only limitation provided for in the Constitution relative to these rights are that no exclusive franchise shall be granted, nor shall any franchise be granted, extended, or renewed for a term longer than 25 years. By virtue of section 5 of House Bill 4 it arrests the unhampered right of the people of the municipal corporations to grant a franchise except as to limitations in protection of the people against monopoly and perpetuity.

Section 5 of House Bill 4 reads:

"No person, firm, association, or corporation except the municipality shall commence the business of furnishing power, heat, light, gas, electricity or water as a public utility or commence the construction of a plant, works, or system therefor, or apply for or be granted a municipal franchise therefor, in any city or town of this state so long as there is in existence a valid franchise or permit authorizing any other person, firm, association, or corporation to conduct in such city or town a business similar to that proposed, until the Corporation Commission of Oklahoma shall issue a certificate of public convenience and necessity therefor, as hereinafter provided. But no such certificate shall be required in cases where no such valid franchise or permit exists."

Under said section the right of the people residing in municipalities to determine whether or not they shall grant an additional franchise is stayed until the Corporation Commission shall determine whether they will permit the citizens of the municipalities to determine the question. That question is settled in advance by the basic law of this state. Section 5 of House Bill 4 is, therefore, clearly unconstitutional. It not only arrests the right, guaranteed under the Constitution, of the citizens of municipalities to express themselves on a proposed franchise, but it also substitutes an exclusive right and privilege to the owners of an existing franchise until the Corporation Commission may determine otherwise. This cannot be permitted, for in section 7 of article 18, Const., we find this language, 'and no exclusive franchise shall 'ever be granted," and we take this to mean that if the citizens of the municipal corporations are prohibited by the Constitution from granting an exclusive franchise, the Legislature cannot delegate to any board or commission the right to grant an exclusive franchise, license, or permit, for it is a well-known principle of law that that which cannot be done directly, cannot be done indirectly.

In testing the constitutionality of House Bill 4 by applying the several sections of the Constitution applicable thereto it appears, first, that the Constitution provided every possible means to prevent monopoly and encourage competition. House Bill 4 destroys competition and attempts to license monopoly through the Corporation Commission.

House Bill 4 is, therefore, clearly unconstitutional, and the judgment of the district court should be reversed as directed in the opinion of this court filed on this date.

---

HUNT, J. (dissenting). This is an appeal from the district court of Okmulgee county. The parties appear here as in the court below and will be so referred to herein.

On July 20, 1905, the incorporated town of Okmulgee, Indian Territory, granted a municipal franchise to L. S. Skelton, his heirs and assigns, to use the streets or avenues, alleys and public places of said town for the purpose of laying pipes, mains, and other appliances, through which to convey gas and furnish the same to the inhabitants of said town. On October 24, 1912, said franchise was assigned to Okmulgee Gas Company, and on July 7, 1925, while engaged in the business of furnishing natural gas as a public utility under said municipal franchise, the Okmulgee Gas Company made and

executed its written declaration and agreement surrendering said municipal franchise for the purposes provided in chapter 102 of the Acts of the Legislature of 1925, and received in lieu thereof a revocable permit as provided in said act. On the 24th day of November, 1925, the city of Okmulgee filed a petition in the district court of Okmulgee county, Okla., for the purpose of enjoining the Okmulgee Gas Company from using the streets and alleys of said municipality, alleging that the franchise granted to L. S. Skelton and his heirs and assigns on July 20, 1905, expired on August 7, 1925, and that the revocable permit under which the utility was then operating was invalid because chapter 102 of the Session Laws of 1925 was unconstitutional. The defendant filed its answer, alleging that while its franchise was in full force and effect, and while it was engaged in the business of furnishing natural gas as a public utility in the city of Okmulgee under such municipal franchise, it executed its written declaration and agreement surrendering said franchise as provided in chapter 102 of the Laws of 1925, and received in lieu thereof a revocable permit from the state granting to the defendant the right, until such permit should be revoked, to conduct its business in the city of Okmulgee and to enjoy the use of the streets, alleys, and public grounds in said municipality for that purpose, and that on the 18th day of July, 1925, the Corporation Commission of Oklahoma, as a duly authorized agent of the state of Oklahoma, had issued to the defendant a certificate to the effect that from the 10th day of July, 1925, the Okmulgee Gas Company was the holder of a revocable permit granting to such utility the right, until such permit should be revoked according to law, to conduct its business in such municipality, and to enjoy the use of the streets for that purpose. The case was tried on an agreed statement of facts, and on April 25, 1927, a decree was rendered denying the plaintiff the relief sought, and dismissing the petition with prejudice. From this judgment the city of Okmulgee has appealed.

The sole question presented for our determination is the constitutionality of the Revocable Permit Law, being chapter 102 of the Laws of 1925.

Much has been said in the briefs filed herein and on oral argument about the effect of this measure and the practical operation of same, and much may very properly be said on both sides of the question as to the wisdom of it, and as to the policy of the state in enacting same. However, these are matters in which we are in no way concerned here, except in so far as they might relate to some of the constitutional questions involved, and a consideration thereof might therefore aid us in construing our Constitution and in determining whether or not any of its provisions or the provisions of the Constitution of the United States have been violated. The responsibility for determining the wisdom of this legislation and for enacting same rests exclusively with the Legislature, and it is not our function to determine whether it acted wisely in enacting same or to anticipate the consequences of the practical operation of the law, but our duty and responsibility is solely to determine whether or not the act conflicts with any of the provisions of the Constitution of this state or of the United States, and particularly with any of those constitutional provisions specifically called to our attention and relied on by plaintiff, and we shall undertake to discharge that duty and shall do so without usurping any of the prerogatives of the Legislature, our function being strictly judicial and in no sense legislative. We are fully cognizant of the importance of this matter, involving as it does a policy of the state in its dealing with the various municipal subdivisions thereof concerning matters of vital import to them, as well as the state at large, and we shall therefore consider carefully every question presented and will review each provision of our Constitution relied on by plaintiff, as far as practicable to do so, in the order set out in the petition in error.

We deem it proper to set out in full in this opinion the act itself. It follows:

"An Act relating to the business of furnishing power, light, heat, gas, electricity, or water in cities and towns; authorizing the surrender of municipal franchises in exchange for revocable permits; requiring certificates of convenience and necessity and providing for the determination and issuance thereof: and repealing acts in conflict herewith.

"Be It Enacted by the People of the State of Oklahoma:

"Section 1. Any person, firm, association, or corporation, now or hereafter engaged in the business of furnishing power, light, heat, gas, electricity or water as a public utility in any city or town in this state under a municipal franchise now in existence or hereafter granted, may at any time before the expiration of such franchise, but not thereafter, file with the clerk of the municipal corporation which granted such franchise and with the Corporation Commission of the state of Oklahoma a written declaration and agreement, executed in the

manner required for the execution of conveyances of real estate, that it surrenders such municipal franchise or the purposes herein provided; and in consideration, the utility surrendering the same shall, by operation of law, receive in lieu of such surrendered franchise, a permit from the state revocable only in the manner hereinafter provided: granting to such utility the right, until such permit shall be so revoked, to conduct the same business in such municipality and enjoy the use of the streets, alleys, and public grounds or ways in the municipality for that purpose and upon the terms and conditions of said surrendered franchise except as to its period of duration, subject to the lawful police regulation and control of such municipality.

"Section 2. Nothing in this Act shall be so construed as to limit the right of any municipal corporation to include in any franchise hereafter granted by it such requirement as it shall see fit that the grantee of such franchise pay to the municipal corporation a portion of the receipts of such grantee from business conducted under such franchise or pay to such municipal corporation any other sum or sums of money; or such reservation of right in the municipality to purchase the property of the grantee used in the conduct of business under such franchise. Every such right to share receipts or to receive payments of moneys or to purchase created by any franchise or other contract; present or future, shall continue to exist to the full extent defined by such franchise or contract; and no existing right of any municipal corporation under the laws of the state of Oklahoma shall be effected (sic) hereby except as herein expressly provided.

"Section 3. Upon the surrender of any municipal franchise, as provided in the first section hereof, it shall be the duty of the Corporation Commission to issue to such utility a certificate to the effect that from the date of the filing of such written declaration and agreement, it is the holder of such permit, and such certificate shall be conclusive of that fact.

"Section 4. Any permit granted under the provisions of this Act may be altered, amended, annulled, revoked, or repealed by enactment of the Legislature of Oklahoma whenever in its opinion such permit may be injurious to the citizens of this state; in such manner, however, that no injustice shall be done to the holder of such permit.

"Section 5. No person, firm, association, or corporation except the municipality shall commence the business of furnishing power, heat, light, gas, electricity or water as a public utility or commence the construction of a plant, works, or system therefor * * * in any city or town of this state so long as there is in existence a valid franchise or permit authorizing any other person, firm, association, or corporation to conduct in such city or town a business similar to that proposed, until the Corporation Commission of Oklahoma shall issue a certificate of public convenience and necessity therefor, as hereinafter provided. But no such certificate shall be required in cases where no such valid franchise or permit exists.

"Section 6. The Corporation Commission is hereby given jurisdiction to determine whether public convenience will be served by such proposed new public utility business and whether public necessity exists therefor and to issue such certificate of public convenience and necessity upon hearing after a written petition therefor shall be filed. The Corporation Commission shall have power to promulgate such rules and regulations not in conflict herewith, as it shall see fit, for the purpose of making this Act effectual, and before hearing any such petition shall fix a date therefor and shall require that notice of such hearing be given by delivering a copy to the chief executive officer and the clerk of all cities and towns effected (sic) by the proposal and to the managing officer of any person, firm, association, or corporation conducting or holding a valid franchise or permit to conduct a similar business in the same locality or any portion thereof. In addition, the Corporation Commission shall require that such notice be published at the expense of the petitioner for at least two weeks in some newspaper or newspapers of general circulation in the cities or towns effected (sic) by such petition. Upon the hearing of such petition, any person interested may appear, and file objections thereto, and offer evidence in support thereof, and the Commission may summon such other witnesses, and require the production of such other evidence as it may deem proper and shall have all and complete investigation of such petition and the objections thereto. Upon the hearing of such application, if the Commission shall find that the petition should be granted, it shall issue under the Seal of the Commission its certificate of public convenience and necessity, and in so doing the Commission may fix the time within which the construction of such utility shall be commenced and completed. Should the Commission find that the certificate should be refused, it shall so order. Any party to the proceedings feeling himself aggrieved by the order of the Commission in issuing or refusing such certificate, may appeal to the Supreme Court of the state of Oklahoma, as provided in other cases of appeal from orders of the Corporation Commission.

"Section 7. All acts and parts of acts in conflict herewith are hereby repealed.

"Approved March 19, 1925."

The plaintiff contends that said chapter 102, S. L. 1925, supra, is unconstitutional and void for the following reasons:

First. That it violates sections 3a and 3b, article 18, of the Constitution, because it deprives plaintiff of its charter right to grant franchises to any corporation with which it is able to make a better contract.

Second. That it violates sections 5a and 5b, article 18, of the Constitution, because it denies to the inhabitants of plaintiff and all other cities and towns of the state of Oklahoma, the constitutional right to grant, extend, or renew a franchise to any person, firm, or corporation whom it deems proper.

Third. That it violates section 5, article 5, and sections 4a, 4b, 4c, 4d, article 18, in that it deprives the inhabitants of plaintiff of the powers of the initiative and referendum as to all local legislation and deprives the municipalities of this state of their right to refer to its citizens the question of whether or not a franchise shall be granted, renewed, or extended.

Fourth. That it violates section 53, article 5, of the Constitution, in that it seeks to extinguish the rights of said municipality to enforce the liabilities and obligations of public utilities under franchises granted by the municipalities.

Fifth. That it violates section 51, article 5, which prohibits the Legislature from passing laws granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within the state of Oklahoma.

Sixth. That it violates section 32, article 2, of the Constitution, which provides that perpetuities and monopolies are contrary to the genius of free government and shall never be allowed, and also section 7, article 18, of the Constitution, which provides that no exclusive franchise shall ever be granted.

Seventh. That it violates section 1, article 2, of the Constitution, in that it destroys the right of local self-government.

Eighth. That it violates sections 46b and 46j of article 5, of the Constitution, in that it is a special law undertaking to regulate the affairs of cities and changing their charters.

Ninth. That it violates section 7, article 2, of the Constitution of Oklahoma and the Fourteenth Amendment to the Constitution of the United States, which provides that no person shall be deprived of life, liberty, or property without due process of law.

Tenth. That it violates section 10 of article 1 of the Constitution of the United States, in that it impairs contractual obligations and denies to the citizens of the municipalities equal protection of the laws.

Defendant contends that the municipalities of the state have only such powers as are expressly delegated by the Constitution or by legislative enactment, and that except where expressly forbidden by the Constitution the Legislature, on behalf of the sovereign, may modify, regulate, or withdraw such delegated powers. That a franchise is a grant by the sovereignty, the state, acting through its agent, the municipality, and is therefore a contract between the state and the utility. That the parties to such contract have the right to agree to its alteration in a manner not inconsistent with the Constitution, and that this act merely provides for its alteration. That the right to amend, alter, annul, or repeal a franchise is expressly reserved to the state in the Constitution. That the control and use of the streets and highways is one affecting the public welfare of the state as a whole, and is not a matter of purely local concern, and the state has retained to itself the exclusive control of the use of same. That the necessity of granting franchises to competing utilities is a question affecting the public welfare, the determination of which is the prerogative of the sovereign state, and that this act merely reasserts the reserved right of the state to determine, through its proper agency, the question of public necessity and convenience. That the act does not invade any rights of the municipality, nor does it grant an exclusive franchise or create a monopoly. That the Legislature in its wisdom and discretion has determined as a matter of public policy that the welfare of the public as a whole can best be served by the regulation of the utilities by the sovereign state rather than by the separate municipalities, which are necessarily concerned only in matters of purely local interest and not the welfare of the state as a whole. And, further, that no harm is done to the municipality and no right taken away from it and no harm done to the individual consumer or the utility, but that the state is only attempting to regulate and control, through its police power, that which is necessary and essential for the public welfare, and that an act of the Legislature will not be held unconstitutional except it be shown to be unconstitutional beyond a reasonable doubt. And, further, that much good is bound to result to the public as a whole from a consistent, co-ordinated policy of regulation of utilities affecting the welfare of the public as a whole as well as the locality in which said public utility may be in part operating. As to whether or not this legislation will accomplish such beneficent results it is not for us to say, as hereinbefore sug-

gested, but it only remains for us to determine whether or not in enacting same the Legislature has acted within the limitations imposed upon it by the Constitution or has violated any of its provisions, and particularly those specifically called to our attention and herein before enumerated.

Every question urged for and against the act here in question has been fully presented in the very elaborate and illuminating briefs furnished both by counsel in the case and amici curiae, and we have thoroughly and carefully considered every contention made and have reviewed all the cases cited, as well as others bearing on this question from this and other jurisdictions, and are of the opinion that this act must stand or fall on a construction of the provisions of our own Constitution and the decided cases construing same.

First, then, let us see just what, if any, rights belonging to the municipality are taken away by this act; and, second, if they are such rights as are guaranteed to the municipalities by the Constitution, and therefore such as cannot be taken away by legislative enactment. That the right to grant franchises is vested in municipalities as agents of the state is not denied, and that that right still exists under this act is likewise not denied. Can the state, though, in the exercise of its sovereign power, acting through its Legislature, limit or restrict this right by providing that, after the municipality has once acted by granting the franchise, the same may be, upon proper application at any time before expiration, converted into a permit revocable only by the state itself in the manner provided by law and subject to all the provisions of the original franchise except as to the term thereof, and further prevent the municipality from granting a second franchise for the same purposes for which one has previously been granted unless a certificate of public convenience and necessity has first been obtained from the Corporation Commission? This, we think, is a fair statement of the effect of this act.

Sections 3a and 3b of article 18 of the Constitution is the provision authorizing cities containing a population of more than 2,000 to frame charters for their own government consistent with and subject to the Constitution and laws of this state. The plaintiff herein having adopted a charter under these provisions of the Constitution, it is urged by plaintiff that the act here in question deprives plaintiff of certain of its charter rights as to granting franchises, and is therefore void. In support of this contention several Oklahoma cases are cited. We have carefully reviewed each of these cases, and will not undertake to set them out in detail here, for the reason that in our judgment they do not in any wise sustain the contention of plaintiff in this regard. There are numerous authorities, however, to the effect that, where cities have adopted charters in accordance with the above-mentioned provisions of the Constitution of this state, the provisions of said charter do not supersede the general laws of the state in matters in which the state has a sovereign interest, and where the provisions of a city charter conflict with the general laws of the state in such matters, said laws will prevail. See State ex rel. Burns v. Linn, 49 Okla. 526, 153 Pac. 826, wherein the second paragraph of the syllabus is as follows:

"Such charter provisions do not supersede the general laws of the state of general concern, in which the state has a sovereign interest, and where the provisions of said charter conflict with the general laws of the state of this character, such laws will prevail."

See, also, Board of Education v. Best, 26 Okla. 366, 109 Pac. 563, and Walton v. Donnelly, 83 Okla. 233, 201 Pac. 367.

The question then arises here as to whether the laws with reference to the granting, extending, or renewal of franchises are matters that are merely municipal in their nature or whether they are such matters as are a concern to the state at large and in which the state has a sovereign interest for the benefit of the people of the state generally.

This question was involved in the case of City of Bartlesville v. Corporation Commission, 82 Okla. 160, 169 Pac. 396, wherein this provision of the Constitution was referred to and the contention there made that, the city of Bartlesville having adopted a charter under these provisions of the Constitution, the state was not authorized to establish and regulate rates and charges for services rendered the public by public service corporations. This contention, however, was not sustained, the court holding:

"The supreme Legislature of the state having seen fit to place the power of regulating rates for gas furnished by public utilities in the Corporation Commission, in our judgment the state has such a sovereign interest in this subject of legislation as to preclude the chartered cities of the state from entering the field by charter provisions."

This rule was also announced in the City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 Pac. 1058; also in Con-

sumers' Gas Company v. Corporation Commission, 95 Okla. 57, 219 Pac. 126 (Galbreath v. City of Tulsa, U. S. Supreme Court).

Plaintiff next contends that this act is void because in violation of sections 5a and 5b of article 18 of the Constitution, because it deprives the city of the full power and authority to grant, extend, or renew any franchise; such power being specifically granted to the municipality by said above-mentioned provisions of the Constitution.

In support of this contention it is urged that these provisions of the Constitution are self-executing grants of power, citing Mayor, etc., of City of Pawhuska v. Pawhuska Oil & Gas Co., 28 Okla. 563, 115 Pac. 353; and, being self-executing, it becomes a grant of power reserved to the people of the municipalities and is complete within itself and that the Legislature has no power to abridge or extend its provisions, citing Williams v. City of Norman, 85 Okla. 230, 205 Pac. 144. A careful examination of Mayor. etc., City of Pawhuska v. Pawhuska Oil & Gas Co., supra, discloses that this case does not hold that these sections contain a grant of power, but merely that they are self-executing; syllabus, parag. 4, thereof being as follows:

"Section 5a, art. 18, of the Constitution, providing that no franchise shall be granted for a longer period than 25 years, is self executing. * * *"

No case has been cited and we have failed to find any wherein it has been held that these sections of the Constitution contain a grant of power.

In Williams v. City of Norman, supra, it was held that section 27, article 10, was a self-executing grant of power, but nowhere in this case is it even suggested that the fact of it being self-executing was the basis for the holding that it contained a grant of power, but the language of the opinion clearly indicated it was so held because of the language of the section itself.

As was said in State ex rel. Edwards v. Millar, Mayor, 21 Okla. 448, 96 Pac. 747, the evident object and purpose of section 27, article 10, is primarily to empower incorporated cities and towns of this state, by a majority of the qualified tax-paying voters voting at an election held for such purpose, to become indebted in a larger amount than that specified in section 26, for the purposes therein enumerated. But for this section (sec. 27, art. 10) no such power would exist and the municipality would be restricted to the limitations contained in section 26,

which the opinion concedes to be a limitation upon the power of the Legislature.

It must be borne in mind that under the law as it existed prior to statehood in Oklahoma Territory, being section 589, Stat. 1893, municipalities were authorized to grant franchises for a term not to exceed 21 years without submitting the question to a vote of the people, and by the terms of the Enabling Act, section 13 thereof, this law, with all laws of Oklahoma Territory, was extended over the state until changed by the Legislature. Therefore, if the Constitution had remained silent on the question of the granting of franchises by municipalities, this section would have been the law on the subject until changed by the Legislature of the state. Thus it is apparent that under the law as it then existed municipalities, acting through their proper officers, would have had the right to grant franchises as agents of the sovereign without submitting same to a vote of the people, but for these provisions of the Constitution by which the framers of the Constitution said to the municipalities, in effect, that hereafter, instead of having the right to grant franchises without a vote of the people, as you have had before statehood and will have after the adoption of this Constitution unless we change it, you must proceed as provided herein, as follows:

"Section 5A. "No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within the corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon 30 days' notice; and no franchise shall be granted, extended, or renewed for a longer term than 25 years."

The language of this section clearly indicates both a limitation and an inhibition. A limitation on the exercising of the power of the municipality to grant franchises as it had theretofore existed, and an inhibition against the Legislature again conferring such power.

It will be noted under this section that the legislative body of a municipality may submit such matter at any time on its own volition without a petition or request therefor on the part of the electors, while the following section, being section 5b, provides said question must be submitted at a special election called for that purpose by the chief executive officer of the city whenever a prop-

er petition signed by a sufficient number of qualified electors is filed demanding it.

Section 5b. "Whenever a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election, demanding that the franchise be granted, extended, or renewed, shall be filed with the chief executive officer of said corporation, the chief executive officer shall, within ten days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city."

When considered in connection with the law on this subject as it existed prior to the adoption of the Constitution, and in our judgment it must be so considered in order to arrive at a proper conclusion, it becomes readily apparent that these provisions merely change the powers and duties of the officers of the municipality as they had existed in this regard before the adoption of the Constitution, and these provisions, instead of conferring new or additional powers, really limited and restricted those theretofore existing, to wit: The right to grant franchises without submitting the question to a vote of the people, and by section 5a, requiring that before granting any franchise the question must first be submitted to a vote of the people, and by section 5b, designating the manner in which the question shall be submitted upon proper petition filed by the requisite number of electors demanding same.

The very language of the Constitution itself, to wit: "No municipal corporation shall ever grant," etc., and further, "and no franchise shall be granted," etc., indicates a clear intention to limit and define the powers of the municipality rather than to grant or extend the same. This act does not undertake to limit or restrict the municipality in granting a franchise, but that function and prerogative is left exclusively with the municipality. This act cannot and does not become applicable until a franchise has first been granted by the city, and after the city has acted in this regard the act merely authorizes the surrender of the franchise by the utility for a revocable permit to be issued in lieu thereof under the supervision of the Corporation Commission containing all the provisions of the original franchise except as to the term thereof.

Furthermore, but for these provisions of the Constitution the Legislature, by statutory enactment, could have amended this law as it existed prior to statehood to read 25, 30, or 50 years, instead of 21. Section 5a, article 18, limits the term for which a municipality may grant a franchise to 25 years, and is therefore an inhibition against the Legislature authorizing municipalities to grant franchises for a longer term, and if this act undertook to authorize the granting of the franchise for a longer term, it would, of course, be clearly unconstitutional because in conflict with this provision. The act, however, merely provides for the amendment of an existing valid franchise as is specifically authorized by section 47, article 9, of the Constitution.

In the early case of Oklahoma City v. Shields, 22 Okla. 266, 100 Pac. 572, this provision is construed and held to apply to franchises of public utilities. The particular franchise under consideration was that of a street railway company, the court holding that the company took its franchise subject to such legislation as the state might enact. The lower court had held that an act of the Legislature passed after granting the franchise could not change or alter the pre-existing rights of the railway company. This holding was reversed in a unanimous opinion by Chief Justice Williams, wherein the court said:

"Section 47, art. 9 (Bunn's Ed. sec. 262) Const. Okla., provides that:

"'The Legislature shall have power to alter, amend, annul, revoke, or repeal any charter of incorporation or franchise now existing and subject to be altered, amended, annulled, revoked or repealed at the time of adoption of this Constitution or any that may be hereafter created, whenever in its opinion it may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the incorporators.'

"The constitutional convention, desiring to preserve the reservations in section 932, Wilson's Rev. & Ann. St. 1903, supra, incorporated said section in the Constitution, and specifically included franchises.

"In the case of Noble State Bank v. C. N. Haskell et al., ante, p. 48, 97 Pac. 590, the clause, 'in such manner, however, that no injustice shall be done to the incorporators,' was construed not to be a limitation upon the power of the Legislature to act, but requiring provision to be had for the preservation of the assets after the repeal or modification of the charter. * * *

"The reservation to the state of the controlling power, in the way of taxation as

to franchises and grants from municipalities of a public nature, is wise and salutary. The municipality, being a subdivision of the state, exists by grant of delegated power, either in the organic law or by enactment of the Legislature. These municipal subdivisions in their infancy, by an overdesire to build and grow, frequently through their municipal government ill advisedly grant away valuable franchises, shackling and burdening future generations. And were it not for the wise provisions in the economy of our law, reserving the power to amend and repeal, and to impose additional burdens upon franchises and these public privileges, the officers of such municipalities, in their over-desire to build, grow, and develop, might unwisely burden the future to develop the present. * * *

"And it is wise and salutary in the economy of state building that such powers have been reserved to the Legislature to have the paramount supervision and control."

A franchise has been defined by this court in So. McAlester-Eufaula Telephone Co. v. State, 25 Okla. 524, 106 Pac. 962, as follows:

"A franchise is a right or privilege granted by a sovereign to one or more parties to do some act or acts which they could not do without this grant from the sovereign power."

In Sapulpa v. Oklahoma Natural Gas Co., 79 Okla. 196, 192 Pac 224, it was held:

"A municipality in granting a franchise to a gas corporation, which permits the use of the streets and alleys for the purpose of furnishing the citizens with gas, acts as a governmental agency of the state. * * *"

In the case of Henderson Nat. Bank v. City of Henderson, 19 Ky. L. Rep. 728, 39 S. W. 1030, a franchise was defined as a right bestowed by a state to be withdrawn or destroyed at the pleasure of the Legislature.

These and other cases to the same effect are conclusive on the proposition that all franchises are granted by the sovereign power, and it therefore follows that the municipality granting such franchises acts only as a governmental agency of the state.

Plaintiff further contends that the act here in question deprives the citizens of the city of Okmulgee of the powers of the initiative and referendum reserved to the people by section 5, article 5, of the Constitution, and also the powers of the initiative and referendum as granted under sections 4a, 4b, 4c, and 4d of article 18 of the Constitution, and that this act is in conflict with the reserved powers of municipalities, as set forth in said sections, in that it deprives

the municipalities of this state of their right to refer to the citizens of the municipalities the question of whether or not a franchise shall be granted, renewed, or extended; citing in support of this contention City of Collinsville v. Ward, 64 Okla. 30, 165 Pac. 1145; Bodine v. Oklahoma City, 79 Okla. 106, 187 Pac. 209; Owen v. Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. State, 29 Okla. 255, 116 Pac. 913; State v. Linn, 49 Okla. 526, 153 Pac. 826. We have examined each of these cases, and agree with plaintiff that they are to the general effect that in matters which are purely municipal and covered by charter provisions the Legislature is not authorized to enact a law abrogating and setting aside such charter provisions. We cannot, however, agree with plaintiff's contention that the act here in question violates these provisions of the Constitution or that the cases above cited are applicable, for the reason, as suggested in our discussion under sections 3a and 3b, supra, the granting of a municipal franchise to a public utility is not a matter of purely municipal concern as contended by plaintiff, but is a matter of public concern, which is a rightful subject of legislation for the Legislature of the state.

It is next contended that this act is violative of section 53, article 5, of the Constitution, in that it seeks to extinguish the right of municipalities to enforce the liabilities or obligations of such public utilities under a franchise previously granted. This section does prohibit the Legislature from releasing or authorizing the release or extinguishing in whole or in part of indebtedness, liabilities, or obligations of any corporation or individual to this state or any municipal corporation thereof, but, as we analyze and construe the act here in question, we fail to see wherein it undertakes to do anything prohibited by said section. The indebtedness, liability, or obligations of the utility to a municipality remain the same under the revocable permit as in the original franchise, and we are of the opinion that the mere fact that the definite term feature of the franchise is eliminated is in no way violative of this section of the Constitution.

In McNeal v. Ritterbusch, 29 Okla. 223, 116 Pac. 778, cited by plaintiff, we find that the only question involved there, as stated in the opinion, was whether the Act of March 8, 1909, amending the Act of May 29, 1908, containing no saving clause as to taxes assessed under the former act and prior to its amendment, had the effect of releasing these taxes. After holding that

the act did not have such effect, the court cited section 53, article 5, of the Constitution, and City of Louisville v. Louisville R. R. Co., 111 Ky. 1, 63 S. W. 14, wherein a similar constitutional provision was under consideration, as authority for the holding that no authority is given or could be given to the general council of the municipality to release in whole or in part taxes due the municipality. It will readily appear, therefore, that this case, McNeal v. Rittenbusch, supra, cannot be accepted as in any way sustaining the contention of plaintiff on this point.

It is next contended that that portion of section 15, article 2, of the Constitution which provides that the Legislature shall not pass any law impairing the obligation of contract is violated because a franchise is a contract between a **municipality** and a utility, and that by reason of this act certain conditions of the contract are abrogated, annulled, and set aside. Again, we must say. as heretofore suggested, that the liabilities and obligations due the municipality by the utility under the franchise contract are not in any manner abrogated, annulled, or set aside, but are continued in full force in all respects as contained in the original franchise. Section 1 of the act covers this proposition fully, as follows:

"* * * And in consideration. the utility surrendering the same shall, by operation of law, receive in lieu of such surrendered franchise, a permit from the state revocable only in the manner hereinafter provided, granting to such utility the right, until such permit shall be so revoked, to conduct the same business in such municipality and enjoy the use of the streets, alleys, and public grounds or ways in the municipality for that purpose and upon the terms and conditions of said surrendered franchise except as to its period of duration, subject to the lawful police regulation and control of such municipality."

It will thus be seen that this act does not purport to release or extinguish indebtedness or impair a contract or any vested right of the municipality or its citizens. It is also well settled that municipalities have no **vested rights** in franchises which they execute as mere agents. Pawhuska Oil & Gas Co. v. City of Pawhuska. 250 U. S. 394; Oklahoma Ry. v. Powell, 33 Okla. 737, 127 Pac. 1080, and Salem v. Salem. Water. Light & Power Co., 255 Fed. 295.

It is next contended that this act is void because it violates section 51, article 5, of the Constitution, and section 32, article 2, which prohibits the Legislature from passing laws granting **exclusive rights or privileges** and provides that **perpetuities or monopolies** are contrary to the genius of free government and shall never be allowed; citing. Rice v. State ex rel. Short, 108 Okla. 4, 232 Pac. 807. It was contended in this case that the contract entered into between the State Board of Affairs on behalf of the state and certain parties for the manufacture of shirts at the state prison with the use of convict labor was void because in conflict with these and other provisions of the Constitution. The right of the state to enter into such contract was upheld, and after a careful consideration of the opinion in this case we are unable to find wherein it even inferentially or otherwise sustains plaintiff's contention here. but are of the opinion that the reasoning employed therein and the holding of the court tends to refute rather than to sustain plaintiff's contention here. We quote therefrom as follows:

"The charge that this contract is in violation of the laws of the state, including section 32. art. 2. of the Constitution, in that it creates a monopoly in favor of the Cherokee Manufacturing Company to the extent of the privileges granted therein, and declared by said section to be contrary to the genius of a free government, is, it seems to us, without foundation. The section of the Constitution referred to provides that perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed. This provision should be read in connection with section 44, art. 5, of the Constitution, which is that:

" 'The Legislature shall define what is an unlawful combination, monopoly, trust, act or agreement. in restraint of trade, and enact laws to punish persons engaged in any unlawful combination, monopoly, trust, act or agreement, in restraint of trade, or composing any such monopoly, trust or combination.'

"In compliance with this constitutional requirement, the Legislature has, by sections 11017 to 11053 (inclusive) Comp. Stat. 1921, defined and declared illegal, certain monopolies. Section 11017, supra, providing that:

" 'Every act, agreement, contract or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state, which is against public policy, is hereby declared to be illegal.'

"It will thus be observed that the Legislature recognized what, no doubt, was in the minds of the framers of the Constitution, that the monopolies denounced by the Constitution are those which have for their purpose infringement upon the freedom of trade."

In Ex parte Tindall, 102 Okla. 192, 229 Pac. 125, decided by this court in 1924, shortly prior to the passage of the act here in question, these provisions of the Constitution were construed in a very exhaustive opinion by Justice Harrison, from which we quote as follows:

"Petitioner's third ground for contention is that the act is violative of section 51, art. 5, of the Constitution, which provides:

"Section 51, art. 5. 'The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this state.'

"And the petitioner's fourth ground of contention is that the act is violative of section 32, art. 2, of the Constitution, which provides:

"Section 32, art. 2. 'Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed; nor shall the law of primogeniture or entailments ever be in force in this state.'

"These two constitutional provisions, in their ultimate effect, attain substantially the same object, viz. Each constitutes a limitation upon the granting of special privileges and the creation of monopolies; hence the two grounds of contention will be considered together. * * *

"The gist of petitioner's contention on the above two grounds is that under the act a person desiring to engage in the transportation business over the public highways must first obtain a license to do so, and that the Corporation Commission is vested with power to grant or refuse such license, and that the power to grant a license to one, and refuse a license to another, is granting to the Corporation Commission an arbitrary power of granting an exclusive privilege and thereby creating a monopoly in violation of the two foregoing provisions of the state Constitution.

"But this contention will not stand the test of fair analysis nor the weight of decisions.

"'Since all rights are held subject to the police power of the state, when necessary the Legislature may prohibit absolutely the maintenance of any particular business if the public safety or the public morals require its discontinuance; and the hand of the Legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. * * * The test of the power is found in the effect the pursuit of the calling has upon the public weal rather than in the inherent nature of the calling itself.' 6 R. C. L. sec. 214, p. 221-2.

"This doctrine is so essential and so sound as to be properly applied to 'private business enterprises' as well as to 'public service enterprises.' It applies to private business enterprises whenever such business affects the public welfare and essentially applies to public service concerns because of the right of the public to regulate a service for which the public must pay a fee and profit. To deny this right to the public would be to deny the public of that sacred right which petitioner has so strenuously argued on his own behalf, viz., that of 'due process of law.'

"Hence the contention is unsound and without merit.

"The dangerous menace, which seems to so much disturb petitioner, viz., 'the granting of a special privilege and creation of a monopoly', is not authorized by the act. When the act is fairly and logically analyzed and its provisions impartially observed, it does not authorize the Corporation Commission to exercise the arbitrary or capricious power of granting a perpetual special privilege or creating a perpetual monopoly. The Legislature in the enactment of this statute has clearly kept in mind the test above quoted from R. C. L., viz., 'the extent to which the public rights and welfare may be affected by any given business enterprise,' and in the statute under consideration the crucial and decisive test of the Corporation Commission's power is the fact of the convenience and necessities of the public.

"The Corporation Commission is not permitted to exercise any of the powers vested in it by the act, unless, as a fact, the public convenience and necessities require the exercise of such power. The question of the public convenience and necessities thereby becomes the decisive question of fact, to be determined from evidence, and if the Corporation Commission be unreasonable in its finding as to such fact or should make an order without sufficient evidence, finding that public convenience or necessity either demanded or did not demand such service, and should make and attempt to enforce an order accordingly, then the party aggrieved, either the applicant or the public, has a right of appeal to this court for a judicial inquiry and review as to the sufficiency of the evidence and the reasonableness of the order.

"The Commission is thereby shorn of those menacing arbitrary powers which petitioner seems to fear. It is within the police power of the state to grant a privilege to render any character of public service which will materially benefit the public, and equally within such power to restrict or deny such privilege whenever it would result in detriment to the public. See Police Power of the State, 6 R. C. L. p. 228; 8 Cyc. 863—874; and same subject in other authorities above cited.

Also Regulation and Prohibition of Occupation, 6 R. C. L. p. 217, and authorities above cited.

"The question whether the public will be beneficially or detrimentally affected by the licensing or refusing to license the operation of motor vehicles as a 'transportation enterprise' over the public highways, for a profit to be paid by the public, is made a determining fact, the reasonableness of which is subject to review by this court. * * *

"Therefore, the act in question does not grant nor purport to grant such arbitrary and final power to the Corporation Commission as will enable it to grant a perpetual special privilege or build up a monopoly,— the demands of public needs and convenience would halt such menace before this court."

Paragraph 9 of the syllabus in said case is as follows:

"The limitations in section 32, art. 2, and section 51, art. 5, of the Constitution, against granting exclusive rights and privileges and creating monopolies, are not exceeded by an act which confers upon the Corporation Commission the power to make and enforce certain rules, where the power to enforce such rules is made conditioned upon the fact of public convenience and necessity.

"It is a fundamental principle that persons or corporations engaged in occupations in which the public has an interest or use may be regulated by statute. In such case the test of power is found in the effect which the pursuit or calling has upon the public weal."

Plaintiff further contends that this act is unconstitutional and void because in conflict with section 7, article 18, of the Constitution, which provides that no **exclusive** franchise shall ever be granted. If it could be said that the act here in question grants an exclusive franchise, this position might be well taken. The word "exclusive" is derived from "ex," out, and "claudere," to shut, meaning to shut out, and as we have already pointed out, the act does not purport to grant or authorize the granting of an exclusive franchise or one that shuts out all others, but merely provides for the amendment of an existing valid franchise. As many franchises as the people of the municipality desire to vote may be granted, subject only to the regulatory control of the Corporation Commission under sections 5 and 6 of the act in the matter of issuing certificates of convenience and necessity. By no manner of reasoning can it be said that because of this provision an exclusive franchise or monopoly is granted, or may possibly be granted, under the act here in question. Noble State Bank v. Haskell, 22 Okla.

48, 97 Pac. 590, is cited in support of this contention. This case involved the constitutionality of the act of the Legislature pertaining to the Depositors Guaranty Fund. This act was assailed as violative of the Constitution in several respects not necessary to enumerate herein. In a very able and exhaustive opinion by Chief Justice Williams every contention of plaintiff was denied and the act sustained. We think some of the language of that opinion relative to the act under consideration is very apropos in the instant case, and therefore quote therefrom as follows:

"The insistence that the act grants special privileges and immunities is equally untenable. It is manifest that in every regulating statute the precise terms prescribed must be to some extent arbitrary, depending upon the exercise of a sound legislative judgment. The constitutional mandate is satisfied if there be no manifest intent to discriminate in favor of a particular class of citizens to the exclusion of others similarly circumstanced, and the provision of the restrictive act be in fact open alike to all citizens who may bring themselves within its terms. This act neither confers special privileges nor makes unjust discriminations, but its privileges are open to every citizen upon the same terms. It denies no privilege to any one, and operates alike upon all who may avail themselves of its benefits. * * * The circumstances that for a time may inflict hardship, inconvenience, and possibly loss to certain individuals, do not amount to a constitutional objection so long as such burdens or losses are not needlessly and unreasonably imposed, but result as an incident to a general enactment fairly designed to subserve the public welfare. If the mere fact of resulting inconvenience and loss to an established business, admittedly subject to public control, were sufficient to preclude control under the police power, then regulation would be practically impossible, and this most salutary and necessary power of sovereignty be seriously abridged or wholly destroyed. This statute grants equal privileges and imposes like restrictions upon all persons under the same circumstances, and does not deprive appellee of due process of law, or deny him equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States."

We quote with approval from Farmers & Merchants Co-Op. Tel. Co. v. Boswell Tel. Co. (Ind.) 119 N. E. 515, wherein this identical proposition was involved:

"Appellant's first proposition is that section 97 of the Public Utility Act (section 10052t3, Burns 1914) is unconstitutional. That portion of said section here involved reads as follows:

" 'No license. permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise, or permit without first securing from the commission a declaration, after a public hearing of all parties interested. that puble convenience and necessity require such second ***utility.'

"The first reason asserted in support of said proposition is that the title of the act is not sufficient to embrace said section 97, in that the title is 'An act concerning public utilities, creating a Public Service Commission, abolishing the Railroad Commission of Indiana, and conferring the powers of the Railroad Commission on the Public Service Commission,' whereas section 97 deprives municipalities of an inherent right and power to say, in the first instance. whether a franchise shall be granted which will result in such duplication of investments, and said title does not refer to, or purport to affect, the powers of cities and towns. Appellant argues that cities and towns have exclusive control of their streets, their power thereover limited only by necessity, and that this power cannot be destroyed by any such indirect legislation.

"This proposition overlooks the fundamental point that the streets of a municipality are parts of the general highways of the state, and, as such, the state has primary control thereover when the interests of the public are concerned, and such power thereover as municipalities have, when the interests of the general public are involved, are granted to the municipalities by the state (Grand Trunk Co. v. South Bend, 174 Ind. 203. 89 N. E. 885, 91 N. E. 809, 36 L. R. A. [N. S.] 850), and may be withdrawn by the state; in effect, an agency for public welfare is thus established and may be thus ended in the municipality. Appellant cites to its said proposition Vandalia, etc., Co. v. State, 166 Ind. 219 76 N. E. 980, 117 Am. St. Rep. 370. This decision holds that a city or town cannot of its own will deprive itself, by contract, of powers delegated to it for public welfare. So far as it touches the question, this decision holds that as to streets and alleys, when public and general welfare are concerned, the power of cities and towns are not inherent, but are conferred. The decision in Indiana Railway Co. v. Calvert, 168 Ind. 321, 80 N. E. 961. 10 L. R. A. (N. S.) 780, 11 Ann. Cas. 635, cited by the appellant. is to the same effect. See. also, decisions cited to this point in Winfield v. Public Service Commission. 118 N. E. 531, 533; Coverdale v. Edwards. 155 Ind. 374, 380, 58 N. E. 495; State ex rel. v. Stickelman, 182 Ind. 102, 106, 105 N. E. 777.

"The use of the state's highways, including as a part thereof the streets of municipalities, by public utilities, and the matter of license to so use are so inseparable that 'An act concerning public utilities' may properly embrace provisions for the granting or refusal of such licenses, and may name a new agency for the consideration of and action upon application therefor. The title of said act embraces the subject-matter of section 97. State v. Monarch, etc., 267 Ill. 528, 108 N. E. 716. Ann. Cas. 1916A. 528; Illys v. White River, 175 Ind. 118, 93 N. E. 670; Board v. Scanlon, 178 Ind. 142, 98 N. E. 801; Marion v. Simmons, 180 Ind. 289, 102 N. E. 132; Pittsburgh v. Chappell. 183 Ind. 141, 106 N. E. 403, Ann. Cas. 1918A, 627; In re Talbott, 58 Ind. App. 426, 108 N. E. 240; Halstead v. Olney Dean, 182 Ind. 446, 105 N. E. 903; Plank R. Co. v. Hannaman, 22 Ind. 484.

"Section 97 does not create a. monopoly in the utility granted the first franchise. The utility holding the first and only franchise, so long as it is the only franchise, is practically, and only in that sense, a monopoly. That such practical monopoly may exist, see Indianapolis Cable Co. v. Citizens,' etc., 127 Ind. 369, 388, 24 N. E. 1054. 26 N. E. 893, 8 L. R. A. 539; City R. Co. v. Citizens' R. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114. But the utility has no exclusive privileges as between itself and the public welfare or interests. The state may authorize a second. If the state determines not to grant a second, it is not because the first is exclusive, but because, in the state's opinion, public welfare will not be served by the second. Appellant took its charter from the state and asked a franchise from the town, knowing this to be the law. Grand Trunk Co. v. South Bend, etc., 174 Ind. 203, 214-223, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (N. S.) 850. Therefore appellee's rights are not in the sense claimed a monopoly.

"The state has not given to appellee, as appellant asserts, 'an exclusive monopoly which it did not have before,' and taken 'from appellant, and all manner of persons and corporations, a right they did not have before this enactment,' because whatever right appellee so took, and whatever right appellant theretofore had, were subject to regulation by the state, and 'the mere fact that a statute or ordinance, which may reasonably be regarded as conducive to the welfare of the public, regulates a trade or business, or lays some burden upon it. does not render it unconstitutional.' Indiana R. Co. v. Calvert, 168 Ind. 321, page 332, 80 N. E. 961, 10 L. R. A. (N. S.) 780, 11 Ann. Cas. 635.

"The foregoing explanation of the relations of the state, municipalities, and public utilities, each to the other, and their respective powers and rights, assists in disposing of several of appellant's other propositions, to wit: While the General Assembly shall not

grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens, the Assembly may, directly or indirectly, for the public welfare, grant or withhold franchises for the use of the public highways, and in thus exercising its police powers, the state may make discriminations and distinctions, and judge of the reasonableness thereof. Consumers' Gas Company v. Harless, 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505; Ferner v. State, 151 Ind. 247. 51 N. E. 360; State v. Hogreiver, 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504; Zumpfe v. Gentry, 153 Ind. 219, 54 N. E. 805; Louisville, etc., R. Co. v. Garrett, 231 U. S. 305, 34 Sup. Ct. 48, 58 L. Ed. 229; State v. Barrett, 172 Ind. 169, 87 N. E. 7; Barrett v. State of Indiana, 229 U. S. 27, 33 Sup. Ct. 692, 57 L. Ed. 1050; C., I. & St. L. Ry. Co. v. Commission, 173 Ind. 469, 87 N. E. 1030, 90 N. E. 1011; Smith v. Indianapolis Ry. Co., 158 Ind. 425, 63 N. E. 849; Pennsylvania Co. v. State, 142 Ind. 428, 41 N. E. 937.

"In this action we may observe that, while there is conflict of authority and difference of judgment as to whether a healthy apprehension of competition will insure better service by public utilities than will be produced by franchises in any sense or degree exclusive (see N. Y. Tel. Co. v. Averill, 199 N. Y. 128, 92 N. E. 206, 32 L. R. A. [N S.] 494, 139 Am. St. Rep. 878; State ex rel. v. Stickelman, 182 Ind. 102, 107, 107 N. E. 777). such questions are to be addressed primarily to the Legislature, or to its designated tribunal; and under the statute now being considered each such situation is to be judged in view of its peculiar circumstances, and thus the responsibility rests with the Legislature, or the Public Service Commission, if a franchise is refused to a competitor, to so supervise and regulate the existing utility as to insure the public welfare."

We reiterate that under the act here involved the utility has no exclusive privilege as between itself and the public welfare or interests. The state may authorize a second franchise. If the state determines not to authorize a second franchise, it is not because the first is exclusive, but because in the state's opinion public welfare will not be served thereby. The mere right to refuse authority for the second does not in any sense make the first exclusive within the meaning of the Constitution.

Counsel contends the people are helpless and competition is forever barred and no relief possible no matter how intolerable conditions may become. Counsel seem to assume that the Corporation Commission would under no circumstances grant the certificate of convenience and necessity to the second or competing utility, and thus permit the people to vote on the question as to whether or not they would grant a second franchise, but the presumption of law is that the Commission would do its full duty in the premises, and, if a proper showing is made, would promptly grant the certificate and thus permit the election to be held. In fact, there is now pending in this court an appeal from an order of the Commission granting such certificate to a second utility and authorizing the calling of an election to submit the question to the voters of the municipality involved. Also the right is reserved to the municipality by section 6. article 18, to construct and operate its own light, heat, or power company, and this right still remains, so, if at any time the first franchise holder or holder of the indeterminate permit incurs the wrath of the people for any reason, ample means are within the hands of the people for gaining relief. Their rights are amply safeguarded and the dangers of oppression at the hands of the utility, as suggested in the briefs filed herein, are more imaginary than real. It is the duty of the utility to render a maximum service at a minimum cost, consistent with a fair return on its investment, and the incentive to render this character of service and to maintain the good will of its patrons is necessarily ever present so that there will be no occasion or desire on the part of the municipality to resort to either of the methods above pointed out. Likewise the character of service rendered and rates charged for same are at all times subject to the regulations and control of the Corporation Commission under the law existing prior to the passage of this act and the previous decisions of this court. So a utility operating under a revocable permit is not so unbridled and unrestrained as counsel would have us believe. Let us see in the last analysis just what this revocable permit is. It permits a public utility, operating under a franchise theretofore granted by the municipality as the agent of the state, to surrender the franchise and receive in lieu thereof the permit under which it operates thereafter, with precisely the same terms and conditions as to the original franchise except as to the period of its duration. In other words, where the original franchise might have had one, ten, or 20 years to run according to its term, the new permit runs for an indeterminate time, subject to being altered, amended, annulled, revoked, or repealed by the Legislature. Can it be said that the franchise. thus converted into a revocable permit, becomes exclusive or perpetual when ample provision is made for the granting of as many other franchises as the municipality may see fit, subject only to the regulatory

control of the Corporation Commission, and the right to revoke is specifically provided for in section 4 of the act and by section 47, article 9, of the Constitution of this state?

Section 1, article 2, and sections 46b and 46j of article 5, relating to the right of **local self government** and providing that the Legislature shall not pass any local or special laws, are also relied on by plaintiff to defeat the act. We have already discussed this proposition under sections 3a and 3b, and it is sufficient to say here that in our judgment the act here in question is in no way violative of these provisions of the Constitution.

Further, it is contended that the act is void because violative of section 7, article 2, of the Constitution of Oklahoma, and of the 14th Amendment to the Constitution of the United States. Plaintiff's argument on this proposition is devoted principally to that portion of the act which requires a certificate of public convenience and necessity from the Corporation Commission of this state before granting a franchise to the second or competing utility; it being urged that the right of a municipality to contract with other individuals, firms, or corporations engaged in the same business is denied, and that these provisions of the Constitution guarantee to a municipality the right to contract. Plaintiff again assumes a false premise in assuming that the municipality's right to contract is denied or abrogated by these provisions of the act. As we have heretofore pointed out, their right to contract and grant franchises is left intact, subject only to the regulatory power of the state, which was, by the Legislature, vested in the Corporation Commission. Provisions similar, if not identical, with these involved here were upheld in Ex parte Tindall, supra. Plaintiff has filed herein supplemental brief which is devoted largely to a review of State ex rel. Jamison v. Denny, Mayor, et al., an Indiana case reported in 21 N. E. 252. This case deals exhaustively with the question of local self-government. The question there presented is stated in a special concurring opinion by Elliott, Chief Justice, thus: Has the General Assembly power to appoint local officers of the county, township, town or city? This question is in no sense involved here, and as heretofore suggested herein, the act here in question does not purport to deny to the municipality the right of local self-government in matters purely municipal.

In discussing the provisions relative to obtaining the certificate of convenience and necessity, in the Wisconsin case cited in the majority opinion herein, 129 N. W. 600, it was said:

"True, the Legislature cannot enpower the Railroad Commission to exercise legislative or judicial power; but it may clothe it with authority to administer a law requiring the ascertainment of facts in order to determine whether the law applies, and if so, how, to situations as they arise. The administrative power includes, necessarily, power to determine the facts necessary to application of the law. That is a familiar principle governing numerous instances of grant of quasi judicial and quasi legislative power. They do not fall within the field of that strictly judicial or legislative power which is undelegable. * * *

"Here the Legislature provided, in effect, that in case of there existing under an indeterminate permit, a right of a corporation to enjoy such privileges as are involved in this case, no other permit or franchise shall be granted to any one to invade, in whole or in part, the same field, except upon a specified condition involving the ascertainment of a fact. That plainly created, conditionally, municipal disability, and to that extent amended all conflicting existing laws. It was the mere ascertainment of the fact that was delegated to the Commission. The prohibition of the exercise of power, waiting upon such ascertainment, was of legislative creation. The mere administrative labor of ascertaining the fact is not legislative power at all in the undelegable sense. Such administrative feature does not involve any element of expediency or legislative discretion, but only the judgment and discretion which any person or body commonly exercises to ascertain whether a given situation satisfies the calls of a rule prescribed by higher authority to a lower for guidance and enforcement."

Any person, firm, or corporation could go in business of furnishing light, heat, or power in a city or town without a franchise if it could engage in such business without having to use streets and highways therefor, and it is because of this fact, and for the purpose of authorizing such use of the streets and highways, that a franchise must first be obtained, and the control and regulation of the use of the streets, alleys, or other public grounds or ways of any municipality is specifically reserved in the state by section 7, article 18, of the Constitution.

As to the right to refer to citizens the question of whether or not a franchise shall be granted, extended, or renewed, we conclude that no such absolute and unequivocal right is anywhere conferred upon the municipality. These provisions of the Constitution contain an inhibition against the municipality granting, renewing, or extending such franchise without first referring it to

the electors in a special or general election. Sections 5a and 5b, supra. It is quite clear that the purpose of these provisions of the Constitution was to limit and restrict the powers ·of the municipality to matters of this kind in such a way as to prevent any action on the part of the municipal officers except with the sanction and approval of the people of the municipality voting in the election called for that purpose, and to these very salutary provisions of the Constitution we would give full force and effect, but nowhere in these provisions of the Constitution or others called to our attention do we find where the state as the sovereign has surrendered to the municipality or the people thereof the absolute right of exercising control and jurisdiction in the matter of the granting of franchises. It is conceded that this power rests in the state originally and must emanate therefrom if conferred upon the municipality, and in order to be so delegated must be specifically conferred either by the Constitution or by the Legislature. We cannot say, and indeed we are not required to say, whether the act in question is perfect and its operation salutary, but these are questions for the consideration of the Legislature, and it may in its wisdom amend or modify the law or repeal it entirely if it should so determine.

In discussing these last two sections of the act, relative to requiring the certificates of convenience and necessity from the Corporation Commission before permitting an election to be held for the purpose of granting franchises for a second utility, I may add it is suggested by counsel, and very properly so, we think, that the act is divisible into two parts; the first part consisting of the first four sections, providing the method and manner whereby a valid existing franchise may be surrendered by the holder thereof for a permit from the state to conduct the same business in such municipality upon the precise terms and conditions of the surrendered franchise, in all respects except the definite term feature is eliminated, said permit being revocable at the will of the Legislature in the manner and under the conditions therein provided. The second part, consisting of sections 5 and 6, prohibits the granting of a second or competing franchise in any city or town where there is in existence a valid franchise or permit until a certificate of public convenience and necessity therefor is obtained from the Corporation Commission in the manner therein provided, with right of appeal to this court from the order of the Commission granting or denying such certificate.

We are inclined to the view that the act is properly divisible as above set out, and being divisible, it is my opinion that the first four sections may be held constitutional, even if sections 5 and 6 should be found to contravene section 5b, article 18, of the Constitution, as is so strenuously contended, and I am further of the opinion, upon consideration of the act, that the Legislature would have enacted said first four sections without sections 5 and 6, and under numerous decisions of this court, if said first four sections are constitutional, as I hold, same may be upheld even if the last two sections were stricken down. It is further my opinion, however, as hereinbefore pointed out, that said sections 5 and 6 should be upheld for the reasons herein stated.

It is conceded that the sovereign gives and the sovereign can take away, but it is contended by plaintiff that that which has been given or conferred by the Constitution cannot be taken away by statute. With this contention, we are in hearty accord, and conceive it to be our duty to recognize and uphold all such rights and powers thus conferred, and to strike down any legislative enactment in any manner abridging or interfering with the rights and powers conferred by the Constitution. It is likewise our duty, though, to recognize the rights and prerogatives of the legislative authority and to uphold its solemn enactments rather than nullify them by judicial construction unless it clearly appears that the plain provisions of the Constitution have been violated. In this regard numerous authorities are cited holding that any doubt as to the constitutionality of an act of the Legislature should always be resolved in favor of the constitutionality of the act.

In the early case of Anderson v. Ritterbusch, Treasurer, 22 Okla. 761, 98 Pac. 1002, in an opinion by Justice Kane, this court said:

"It may be that Senate Bill No. 245 is not as complete a piece of legislation as possible, but we believe it is adequate for the purposes for which it was enacted, and infringes no vested rights of the persons affected by it. That it may be capable of improvement is a matter with which we have nothing to do. That is with the Legislature. 'Judges ought to remember that their ·office is jus dicere, and not jus dare—to interpret law, and not to make law, or give law.' The rule laid down by Mr. Chief Justice Marshall in Fletcher v. Peck, 6 Cranch, 87-128, 3 L. Ed. 162, is sound and salutary:

" 'The question, whether a law be void for its repugnancy to the Constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the

affirmative in a doubtful case. * *.* But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear strong conviction of their incompatibility with each other.' "

In the case at bar it may be said that House Bill No. 4 is not as complete a piece of legislation as possible, but the matter of its alteration or improvement is one with which we have nothing to do, since our function is exclusively to interpret law, not to make law, and in the language of Chief Justice Marshall in the case above cited, I am unable to say that I feel a clear and strong conviction of the incompatibility of the act here in question with the Constitution.

In Graham v. Childers, 114 Okla. 38, 241 Pac. 178, it was said:

"He who contends that an act of the sovereign legislative body is in excess of its constitutional authority must sustain the burden of showing a state of facts—if facts are drawn in issue—which, when the applicable provisions of the Constitution are considered, show the attempted exercise of power to be beyond constitutional limitations. Until that is done, the courts indulge every presumption that the legislative conclusion, which was reached by its passage of the act, that the provisions of the act are in fact within its authority, was correct."

This rule was early announced in this jurisdiction in City of Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338, in a very exhaustive opinion by Justice Dunn, and has consistently been followed since that time. The first paragraph of the syllabus of that opinion is as follows:

"A court will never declare an act of legislation, passed with all the forms and solemnities requisite to give it the force of law, unconstitutional and void, unless the nullity and invalidity of the act are placed, in its judgment, beyond a reasonable doubt."

This holding seems to be uniform, and while the act here in question could very easily be sustained under this proposition, for in my judgment it certainly cannot be said that the act is unconstitutional beyond a reasonable doubt, but I do not need to, and do not, base my holding herein entirely on this proposition, for I am thoroughly satisfied, after a careful and most exhaustive study of this question, that this act is in no way violative of any of the provisions of our Constitution.

In arriving at this conclusion I determined, first, that in the Constitution itself a clear intent was evinced to retain absolute and exclusive control in all matters of this kind in the state as the sovereign, that the state has control of the use of the streets and highways, having expressly reserved that right in the Constitution, and that section 47, article 9, specifically confers upon the Legislature the power sought to be exercised by it in the passage of the act here in question.

I have carried comment and citations further than I otherwise would because of the vigorous insistence by counsel that the act in question was vulnerable to their attack on the constitutional grounds discussed and because of the many questions presented and the great importance of this matter. I am satisfied with the correctness of the conclusion to which I have come, both from principle and authority derived from the construction placed upon these constitutional provisions by this court and upon similar constitutional provisions by scholarly and learned courts of other states. Upon consideration of all the authorities I cannot say that the unconstitutionality of this act has been shown beyond a reasonable doubt, but conclude that the act is neither repugnant to the Constitution of Oklahoma nor that of the federal government, and, following and applying the rules heretofore laid down for us by our eminent predecessors and hereinbefore cited, I am clearly of the opinion the act here in question should be sustained, and therefore am unable to agree with the opinion of the majority and most respectfully dissent therefrom.